CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

Attorneys for PLAINTIFFS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

MINOR DOE 1, BY AND THROUGH HIS
GUARDIAN AD LITEM, GUARDIAN
DOE 1, C.V.; MINOR DOE 2, BY AND
THROUGH HIS GUARDIAN AD LITEM,
GUARDIAN DOE 2, S.C.; MINOR DOE 3,
BY AND THROUGH HIS GUARDIAN AD
LITEM, GUARDIAN DOE 3, G.S.;
PARENT DOE 1, C.V. AND PARENT DOE
2, C.C., *PARENTS OF MINOR DOE 1*;
PARENT DOE 3, S.C. AND PARENT DOE
4, E.C., *PARENTS OF MINOR DOE 2*;
PARENT DOE 5, G.S. AND PARENT DOE
6, J.S., *PARENTS OF MINOR DOE 3*,

        Plaintiffs,

    vs.

MAKING  WAVES  ACADEMY;  MAKING
WAVES    EDUCATION    PROGRAM;
MAKING  WAVES  FOUNDATION,  INC.;
MAKING-WAVES,  INC.**;**  ALTON  B.
NELSON,  JR.  CHIEF  EXECUTIVE
OFFICER, *In his official and Individual
Capacity*; Dr. Evangelia Ward-Jackson
Middle School Director (Principal), *In her
official and Individual Capacity*; Libby Cole
Chief of Staff, *In her official and*

Case No.:

**PLAINTIFFS' COMPLAINT FOR
DAMAGES**

**FEDERAL CLAIMS**
1. **VIOLATION 42 U.S.C § 1983, BASED
   ON 14th AMENDMENT DEPRIVATION
   OF LIBERTY INTEREST;**
2. **VIOLATION 42 U.S.C § 1983, BASED
   ON NEGLIGENT TRAINING, HIRING,
   AND SUPERVISION;**
3. **VIOLATION 42 U.S.C. 1983 Violation of
   Title IX**
4. **VIOLATION 42 U.S.C. 1983 based on
   The Trafficking Victims Protection Act
   (TVPA) of 2000)**

**STATE CLAIMS**
5. **NEGLIGENCE, NEGLIGENT
   SUPERVISION, NEGLIGENT HIRING
   and/or RETENTION, NEGLIGENT
   FAILURE TO WARN TRAIN OR
   EDUCATE;**
6. **CONSTRUCTIVE FRAUD (C.C. § 1573);**
7. **INTENTIONAL INFLICTION OF
   EMOTIONAL DISTRESS;**
8. **BREACH OF FIDUCIARY DUTY;**
9. **SEXUAL HARASSMENT (C.C. § 51.9);**
10. **ASSAULT**
11. **SEXUAL BATTERY (C.C. § 1708.5);**
12. **GENDER VIOLENCE (C.C. §52.4)**

**[DEMAND FOR JURY TRIAL]**

PLAINTIFFS' COMPLAINT FOR DAMAGES - 1

*Individual Capacity*,

CAMP EPIC; RONALD GUINTO;         )
And DOES 1-25,                    )
inclusive,                        )
                                  )
            Defendants.           )
_____ )

**[Filed Pursuant to C.C.P. § 340.1(a)]**

COME NOW, PLAINTIFFS, MINOR DOE I, a minor, by his Guardian Ad Litem, DOE 1; MINOR DOE 2, a minor, by his Guardian Ad Litem, DOE 2; MINOR DOE 3, a minor, by his Guardian Ad Litem, DOE 3:

## I. JURISDICTION

1.      This Court has jurisdiction over this lawsuit because the suit arises under 42 U.S.C. § 1983 and asserts facts showing that DEFENDANTS, and each of them, acted willfully, deliberately and pursuant to a policy, custom and practice, and with reckless disregard of PLAINTIFFS' established Federal and State Constitutional rights.

## II. VENUE

2.      Venue is proper in this district under 28 U. S. C. § 1391 (b) (1) because DEFENDANTS reside in this district. Venue is also proper in this district under 28 U.S.C§1391 (b) (2) because the events, acts and omissions giving rise to this claim occurred in this district.

## III. THE PARTIES
### (PLAINTIFFS)

3.      At all times mentioned herein, PLAINTIFF MINOR DOE 1, by and through his Guardian Ad Litem, GUARDIAN DOE 1, was a resident of the County of Contra Costa, State of California. The name used by MINOR DOE 1 in this Complaint is not the actual name of MINOR DOE 1, but is a fictitious name utilized to protect the privacy of MINOR DOE 1, a victim of childhood sexual harassment, molestation and abuse. PLAINTIFF MINOR DOE 1 is a male who was born on May 5, 2002, and was a minor during the entire time of the sexual misconduct alleged herein. On or about October of 2013, MINOR DOE 1 was a minor student

who attended MAKING WAVES ACADEMY MIDDLE SCHOOL (hereinafter referred to "MIDDLE SCHOOL"), in Richmond, California in the County of Contra Costa.

4.      At all times mentioned herein. PLAINTIFF MINOR DOE 2, by and through his Guardian Ad Litem, GUARDIAN DOE 2, was a resident of the County of Contra Costa, State of California. The name used by MINOR DOE 2 in this Complaint is not the actual name of MINOR DOE 1, but is a fictitious name utilized to protect the privacy of MINOR DOE 2, a victim of childhood sexual harassment, molestation and abuse. PLAINTIFF MINOR DOE 2 is a male who was born on September 13, 2002, and was a minor during the entire time of the sexual misconduct alleged herein. On or about October of 2013, MINOR DOE 2 was a minor student who attended MIDDLE SCHOOL in Richmond California in the County of Contra Costa.

5.      At all times mentioned herein, PLAINTIFF MINOR DOE 3, by and through his Guardian Ad Litem, GUARDIAN DOE 3, was a resident of the County of Contra Costa, State of California. The name used by MINOR DOE 3 in this Complaint is not the actual name of MINOR DOE 3, but is a fictitious name utilized to protect the privacy of MINOR DOE 3, a victim of childhood sexual harassment, molestation and abuse. PLAINTIFF MINOR DOE 3 is a male who was born on March 22, 2002, and was a minor during the entire time of the sexual misconduct alleged herein. From on or about early 2013 until on or about November 2013, MINOR DOE 3 was a minor student who attended the MIDDLE SCHOOL in Richmond, California in the County of Contra Costa.

6.      At all times mentioned herein, PLAINTIFFS PARENT DOE 1, C.V., and PARENT DOE 2, C.C., were residents of the County of Contra Costa, State of California. The names used by PARENT DOE 1, C.V., and PARENT DOE 2, C. C., in this Complaint are not the actual names of PARENT DOE 1, C. V., and PARENT DOE 2, C. C., but are fictitious names utilized to protect the privacy of MINOR DOE 1 a victim of childhood sexual harassment, molestation and abuse. PLAINTIFFS PARENT DOE 1, C. V., and PARENT DOE 2, C. C., are the parents of MINOR DOE 1.

7.     At all times mentioned herein, PLAINTIFFS PARENT DOE 3, S.C. and PARENT DOE 4, E. C., were residents of the County of Contra Costa, State of California. The names used by PARENT DOE 3, S.C. and PARENT DOE 4, E. C., in this Complaint are not the actual names of PARENT DOE 3, S.C. and PARENT DOE 4, E. C., but are fictitious names utilized to protect the privacy of MINOR DOE 2, a victim of childhood sexual harassment, molestation and abuse. PLAINTIFFS PARENT DOE 3, S. C. and PARENT DOE 4, E. C., are the parents of MINOR DOE 2.

8.     At all times mentioned herein, PLAINTIFFS PARENT DOE 5, G. S., and PARENT DOE 6, J. S., were residents of the County of Contra Costa, State of California. The names used by PARENT DOE 5, G. S., and PARENT DOE 6, J. S. in this Complaint are not the actual names of PARENT DOE 5, G. S., and PARENT DOE 6, J. S., but are fictitious names utilized to protect the privacy of MINOR DOE 3, a victim of childhood sexual harassment, molestation and abuse. PLAINTIFFS PARENT DOE 5, G. S., and PARENT DOE 6, J. S., are the parents of MINOR DOE 3.

9.     At certain times mentioned herein, PLAINTIFFS MINOR DOE 1, MINOR DOE 2, and MINOR DOE 3, shall be referred to collectively as "MINOR DOE PLAINTIFFS." At certain times mentioned herein, PLAINTIFFS PARENT DOE 1, C. V., and PARENT DOE 2, C. C., PARENT DOE 3, S. C. and PARENT DOE 4, E. C., PARENT DOE 5, G. S., and PARENT DOE 6, J. S., shall be referred to collectively as "PLAINTIFFS' PARENTS."

**(DEFENDANTS)**

10.     DEFENDANT MAKING WAVES EDUCATION PROGRAM (hereinafter "EDUCATION PROGRAM"), was and is, at all times mentioned herein a business entity of form unknown, having its principal place of business in the County of Contra Costa, State of California. The EDUCATION PROGRAM purposely conducts substantial educational business activities in the State of California, and was the primary entity owning, operating and controlling MIDDLE SCHOOL and the activities and behavior of its employee agents RONALD GUINTO and other Supervisory Personnel at MIDDLE SCHOOL.

PLAINTIFFS' COMPLAINT FOR DAMAGES - 4

11.     DEFENDANT MAKING WAVES FOUNDATION, INC. (hereinafter "FOUNDATION"), at all times mentioned herein was and is, a California Nonprofit Public Benefit Corporation, having its principal place of business in the County of Contra Costa, State of California. The FOUNDATION affirmatively conducts substantial educational business activities in the State of California, and was the primary entity owning, operating and controlling MIDDLE SCHOOL and the activities and behavior of its employee agent RONALD GUINTO and other Supervisory Personnel at MIDDLE SCHOOL.

12.     DEFENDANT MAKING WAVES, INC. dba MAKING WAVES ACADEMY (hereinafter "MAKING WAVES, INC."), at all times mentioned herein was and is, a California Nonprofit Public Benefit Corporation, having its principal place of business in the County of Contra Costa, State of California. MAKING WAVES, INC. affirmatively conducts substantial educational business activities in the Slate of California, and was the primary entity owning, operating and controlling MIDDLE SCHOOL and the activities and behavior of its employee agent RONALD GUINTO and other Supervisory Personnel at MIDDLE SCHOOL.

13.     At all times mentioned herein, each DEFENDANT was responsible in some manner or capacity for the occurrences herein alleged. PLAINTIFFS' damages, as herein alleged, were proximately caused by all said DEFENDANTS: DEFENDANTS MAKING WAVES, INC., CAMP EPIC, the FOUNDATION, the EDUCATION PROGRAM, RONALD GUINTO, and DOES 1-100 are sometimes collectively referred to herein as "DEFENDANTS" and/or as "ALL DEFENDANTS"; such collective reference refers to all specifically named DEFENDANTS. MAKING WAVES, INC., the FOUNDATION, the EDUCATION PROGRAM, and DOES 1-100 will sometimes be referred to as "MAKING WAVES EDUCATIONAL ENTITIES."

14.     DEFENDANT RONALD GUINTO (hereinafter "GUINTO") is an adult individual who, PLAINTIFFS are informed and believe, is currently incarcerated in the County of Contra Costa, California. At all times herein alleged, GUINTO was an employee, agent, and servant of MAKING WAVES, INC., CAMP EPIC, the FOUNDATION, the EDUCATION PROGRAM, and DOES 1-100 under the supervision of MAKING WAVES, INC., CAMP EPIC,

the FOUNDATION, the EDUCATION PROGRAM, and DOES 1-100, GUINTO was hired by MAKING WAVES EDUCATIONAL ENTITIES as a schoolteacher and counselor to minor students. He worked as a schoolteacher at MIDDLE SCHOOL, and during this time and while acting in such capacity came into contact with PLAINTIFFS and sexually harassed and abused them.

15.     DEFENDANT CAMP EPIC, at all times mentioned herein, was and is, a business entity of form unknown, having its principal place of business in the County of Contra Costa, State of California. CAMP EPIC was an entity that operated, at least partially, on the MAKING WAVES EDUCATIONAL ENTITIES' premises, and coordinated trips to remote locations, such as Yosemite National Park, Napa Valley, Lake Tahoe, and other locations, where minors were secluded with GUINTO. PLAINTIFFS are informed and believe, and on that basis allege, that CAMP EPIC was never an independent business entity duly operating under the laws of the State of California. PLAINTIFFS allege that CAMP EPIC was nothing but the alter ego of MAKING WAVES EDUCATIONAL ENTITIES in its capacity as a camp for children in that it was not properly formed, capitalized, insured, did not maintain separate bank accounts and did not observe proper business formalities so as to separate itself from MAKING WAVES EDUCATIONAL ENTITIES but was a program of MAKING WAVES EDUCATIONAL ENTITIES. Similarly, MAKING WAVES EDUCATIONAL ENTITIES were the alter ego of CAMP EPIC and RONALD GUINTO while GUINTO was operating CAMP EPIC on behalf of MAKING WAVES EDUCATIONAL ENTITIES from 2009 through the present. PLAINTIFFS allege that at all times mentioned herein, there existed a unity of interest and ownership among MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC such that any individuality and separateness between them ceased to exist. They were the alter ego of each other in that they purchased, controlled, dominated and operated each other without any regard to maintaining a separate identity, and without observing required formalities or other such expressions of division.

16.    "MIDDLE SCHOOL" shall be the term used to refer to the MAKING WAVES ACADEMY MIDDLE SCHOOL that was attended by all MINOR DOE PLAINTIFFS. It was at all times a charter school and educational institution owned and operated by MAKING WAVES EDUCATIONAL ENTITIES, and operated as a middle school for students approximately 12 through 15 years of age. MIDDLE SCHOOL'S website advertises the school's "vision" as follows: "The school's vision is grounded in our core values and our commitment to inspiring students to reach for excellence and preparing them for high school, the college of their choice, and ultimately, opportunities that change lives."

17.    At all times relevant herein, the MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC, which operate, own and supervise the MIDDLE SCHOOL, operate under a charter from a public entity and are not local public entities, which otherwise relieves MINOR DOE PLAINTIFFS from having had to file Government Tort Claims, pursuant to *Wells* v. *One20ne Learning Foundation* 39 Cal. 4th 1164 (2006). Even supposing that MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC are local public entities, the MINOR DOE PLAINTIFFS' are exempt from the claim filing on account that all alleged abuse occurred after January I, 2009, pursuant to *Government Code* § 905(m).

18.    DEFENDANT DOES 1 through 100 are sued herein under said fictitious names. PLAINTIFFS are ignorant as to the true names and capacities of these DOE DEFENDANTS, whether individual, corporate, associate, or other, and therefore sue said DEFENDANTS by such fictitious names. When their true names and capacities are ascertained, PLAINTIFFS will request leave of the Court to amend this Complaint to state their true names and capacities herein.

19.    At all times mentioned herein, there existed a unity of interest and ownership among DEFENDANTS MAKING WAVES EDUCATIONAL ENTITIES, CAMP EPIC and DOES 1-100, such that any individuality and separateness between them ceased to exist. These particular DEFENDANTS were the successors-in-interest and/or alter egos of one another, in that they purchased, controlled, dominated and operated one another without any separate identity, observation of formalities, or other manner of division. To continue maintaining the

PLAINTIFFS' COMPLAINT FOR DAMAGES - 7

facade of a separate and individual existence among these DEFENDANTS would serve to perpetrate a fraud and an injustice.

20.    At all times mentioned herein, DEFENDANTS were the agents, representatives and employees of each and every other DEFENDANT. In perpetuating the harms hereinafter alleged, DEFENDANTS were acting within the course and scope of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

21.    At all times mentioned herein. DEFENDANTS were the trustees, partners, servants, joint venturers, shareholders, contractors, and/or employees of each and every other DEFENDANT, and the acts and omissions herein alleged perpetrated by them, either acting individually and within the scope of their authority, and with the permission and consent of each and every other DEFENDANT, said conduct was thereafter ratified by each and every other DEFENDANT, and each of them is jointly and severally liable to PLAINTIFFS.

## STATE ACTION

22.    DEFENDANTS MAKING WAVES, INC. and MAKING WAVES FOUNDATION, INC. are Nonprofit Corporations whose regulatory activities are intertwined with state action owing to the pervasive entanglement of the Contra Costa County, the State of California, and Federal Government funding.[1]

23.    DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES enjoy a close nexus with the State and as such, DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES' conduct alleged herein may be fairly treated as that of the State itself. DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES, a private entity, is considered a state actor

---

[1] *Brentwood Acad. V. Tenn. Secondary Sch.Ath. Ass'n*, 531 U.S. 288.

PLAINTIFFS' COMPLAINT FOR DAMAGES - 8

when it is entwined with governmental policies or when government is entwined in its management or control.

24.     DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES receive approximately two-thirds of its funding from governmental entities which, in 2016, exceeding $8 Million dollars. DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES also "encourages employees to participate in a flexible spending account, 403 B retirement plan (while matching options after one year for non-teaching faculty), CalSTRS (for teaching faculty), and an employee assistance program."[2] CalSTRS is The California State Teachers' Retirement System, which provides retirement, disability and survivor benefits for California's 914,454 prekindergarten through community college educators and their families. Intertwinement is further expressed in that DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES is a public charter school receiving a mix of state, local, and federal monies based on the number of students they enroll. Like other public schools, charter schools receive funding based on Average Daily Attendance (ADA). [3]

25.     Moreover, DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES is bound by Section 1, 44030.5(a) of the Education Code, stating:

> "The superintendent of a school district or county office of education, or the administrator of a charter school, employing a person with a credential shall report any change in the employment status of the credential holder to the commission not later than 30 days after the change in employment status, if the credential holder, while working in a position requiring a credential, and as a result of an allegation of misconduct or while an allegation of misconduct is pending, is dismissed, is non-reelected, resigns, is suspended or placed on unpaid administrative leave for more than 10 days as a final adverse action, retires, or is otherwise terminated by a decision not to employ or reemploy."

---

[2] http://www.making-waves.org

[3] https://www.making-waves.org/foundation/about-us/faq/general

26.     DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES are shown further to be entwined with the State by the fact that they follow the State Education Code and the State Health and Safety Code.

"EC Section 47605(b)(5)(F) specifies that the charter must describe the procedures that the school will follow to ensure the health and safety of pupils and staff. These procedures must include the requirement that each employee of the school furnish the school with a criminal record summary as describes in EC Section 44237, a full description of a school's health and safety policies which may include a variety of issues, such as immunizations, tuberculosis testing, and disaster procedures. The California *Health and Safety Code* Section 12408 requires children to have a comprehensive health screening and evaluation upon school entry. EC Section 47605(d) prohibits a charter school from charging tuition. It may charge fees for optional programs and activities that are recreational and outside of regular school programs.  Pursuant to *EC* Section 47634.4 (Chapter 6, Article 2 of the Charter School Act), if a charter school participates in a program, or receives funding for a program requiring the development of a Single Plan for Student Achievement (SPSA) and/or the development of a School Site Council, the charter must comply with those programmatic requirements."

27.     Additionally, DEFENDANT MAKING WAVES charter school was created by the government:

"Making Waves Academy's charter authorizer is the Contra Costa County Office of Education. The authorizer provides monitoring and oversight to make sure there is adherence to specific guidelines and expectations laid out in the charter, allowing the school to use site-based management and governance while teaching to approved California State standards." Charters must seek renewal from their authorizer every five years. Authorizers are more likely to renew charters that are proven to be effective in helping their students meet both the expectations described in the charter and the statewide standards for student achievement. As a public school, charters are measured by their academic performance on California state tests (which are published and open to the public.[4]

28.     Further entwinements between DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES and the State are reflected in the Making Waves Academy Student Parent Handbook.[5] Firstly, the front page lists "Contra Costa County Office of Education Karen Sakata, Superintendent of Schools."

---

[4] https://www.makingwavesacademy.org/about-us/faqs

[5] https://www.makingwavesacademy.org/uploaded/MWA_Student_Parent_Handbook_2015-2016_-_10-14-15_-_abn_final.pdf

29.     An additional entwinement:

"Special education services are provided by the West Contra Costa Unified School District (WCCUSD) to all eligible MWA [DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES] students in accordance with the Individuals with Disabilities Education Act (IDEA), the policies/requirements of WCCUSD's SELPA Local Plan for Special Education. Students may be referred for special education support services through the Response to Intervention model adopted by MWA. Identification is made through the Student Study Team (SST) process, by evaluating the student's response to intervention and possible need for a higher level of support, and by consulting with WCCUSD's appointed Special Education approved designee to determine eligibility. Identification can take place at any time in the school year and support will be given as soon as eligibility is determined. If a student's need cannot be met in the least restrictive environment within the MWA program, the student's needs are subject to a more appropriate setting [non-severe handicap] (NSH) and turned over to WCCUSD or The Contra Costa County Office of Education (CCCOE) or designee program specialist to have needs met within the district or allow the district to decide to provide services outside of the district." Id.

30.     Additional entwinement is reflected by the fact that the charter school is a "public school," and therefore subject to the government mandate that "All school children of school age (6-18 years old) are legally required to attend public school unless they have been exempt from attendance in accordance with the provisions of the Educational Code 48200." Id.

31.     An additional example of entwinement is the fact that "Making Waves Academy has the right and WILL enforce California Education Code § 32210, as well as any other legal remedies available as deemed appropriate by MWA. California Education Code Section § 32210 states, "Any person who willfully disturbs any public school or any public school meeting is guilty of a misdemeanor, and shall be punished by a fine of not more than five hundred dollars ($500)." Id.

32.     A further example of entwinement shown by this Parent Student Handbook is its policy on Suspension:

"Committed sexual harassment, as defined in Education Code Section 212.5. For the purposes of this section, the conduct described in Section 212.5 must be considered by a reasonable person of the same gender as the victim to be sufficiently severe or pervasive to have a negative impact upon the individual's academic performance or to

create an intimidating, hostile, or offensive educational environment. This section shall apply to students in any of grades 4 to 12, inclusive. • Caused, attempted to cause, threatened to cause or participated in an act of hate violence, as defined in subdivision (e) of Section 233 of the Education Code. This section shall apply to students in any of grades 4 to 12, inclusive."

33.    A final example of entwinement is the fact that "The three-year budget is reviewed, revised if needed, and approved by the CEO, CFO, Finance Committee, Board of Directors and Contra Costa County Superintendent of Schools in December and March of each year."[6]

## IV. RATIFICATION, ADOPTION AND AUTHORIZATION

34.    DEFENDANT COUNTY and its managing agents, in both their individual and official capacities, ratified, adopted and authorized each of DEFENDANTS' and managing agents' illegal conduct. DEFENDANT COUNTY, and its managing agents, in both their individual and official capacities, knew, or should have known, that DEFENDANTS and managing agents were engaging in illegal conduct and had been warned, informed, and given prior notice of the illegal conduct.

35.    It is well established that when an employer ratifies the tortious conduct of an employee, he or she becomes "liable for the employee's wrongful conduct as a joint participant." *Fretland v. County of Humboldt* 69 Cal. App. 4th 1478, 1489-1490 (1999). An employer who fails to discipline an employee after being informed of that employee's improper conduct can be deemed to have ratified that conduct. *Hart v. National Mortgage & Land Co.* (1987) 189 Cal. App. 3d 1420, 1430 (1987); *Iverson v. Atlas Pacific Engineering* 143 Cal. App. 3d 219, 228(1983). According to the court in *Iverson, supra,* if an employer is informed that an employee has committed an intentional tort and nevertheless declines to "censure, criticize, suspend or discharge" that employee, a claim can be made for ratification. Id.

---

[6] https://www.makingwavesacademy.org/uploaded/WASC_Summary_ENG-_4_1_14_-_aj_PDF_Version.pdf

36.     Ratification is the voluntary election by a person to adopt in some manner as his own, an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. A purported agents act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it. *Fretland*, supra 69 Cal. App. 4th 1

37.     At all relevant times alleged herein, DEFENDANT COUNTY, and its managing agents, in both their individual and official capacities, had actual and constructive knowledge of DEFENDANTS, and managing agents' illegal conduct and has endorsed, ratified, and encouraged DEFENDANTS' illegal behavior. DEFENDANT COUNTY, and its managing agents, in both their individual and official capacities, failed to take any corrective action to protect employees and the public from DEFENDANTS' illegal behavior.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

38.     PLAINTIFFS have complied with the Notice of claim requirements pursuant to Government Code Section 910 et seq. by duly serving their Notice of Claim on the municipal DEFENDANTS.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR DAMAGES

39.     PLAINTIFFS have suffered economic and non-economic damages, mental and emotional distress, pain, anxiety, and loss of enjoyment of life, fear, Post-Traumatic Stress Disorder ("PTSD'), discomfort, inconvenience, misery and suffering. All PLAINTIFF PARENTS have suffered misery, fear, physical injuries upon discovering the molestations and harm to their children. Two of PLAINTIFFS' PARENTS have suffered severe injuries, including strokes, heart attacks and other severe injuries, and illnesses, caused by the conduct of DEFENDANTS, and each of them.

40.     At all times material hereto, the MINOR DOE PLAINTIFFS were students at the MIDDLE SCHOOL and thereby under the control, care and supervision of MAKING WAVES EDUCATIONAL ENTITIES.

41.     By hiring RONALD GUINTO to serve as a schoolteacher and counselor to minor students, MAKING WAVES EDUCATIONAL ENTITIES held out to the public that RONALD GUINTO was of high ethical and moral repute and in good standing with MAKING WAVES EDUCATIONAL ENTITIES, the County of Contra Costa, the State of California, and the public at large.

42.     MAKING WAVES EDUCATIONAL ENTITIES represented to the public, PLAINTIFFS and their families that GUINTO was a highly qualified schoolteacher and counselor charged with assisting MINOR DOE PLAINTIFFS in navigating through the academic and personal issues they faced. Inherent in these representations was the understanding that GUINTO was selected to educate, lead, guide, mentor and counsel PLAINTIFFS. Thus, PLAINTIFFS and their families reasonably assumed that GUINTO was worthy of their trust. As a result, GUINTO was put into a position to teach, counsel and advise minor students at MAKING WAVES EDUCATIONAL ENTITIES, including MINOR DOE PLAINTIFFS, regarding academics and general psychological issues.

43.     At all times material hereto, GUINTO was employed by MAKING WAVES EDUCATIONAL ENTITIES and by CAMP EPIC as a teacher, counselor and advisor. In such capacity, GUINTO was under the direct supervision, employ, agency, and control of MAKING WAVES EDUCATIONAL ENTITIES, CAMP EPIC and DOES 1-100. His employment duties and responsibilities with named DEFENDANTS included, in part: providing for the supervision, counseling, advisory, educational, and emotional needs and well-being of students of MIDDLE SCHOOL and other children, including the MINOR DOE PLAINTIFFS.

44.     Through his position with MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC, GUINTO was placed into direct contact with MINOR DOE PLAINTIFFS as students at MIDDLE SCHOOL. GUINTO was assigned to teach, coach, counsel, advise,

chaperone, and mentor MINOR DOE PLAINTIFFS. It is under these circumstances that MINOR DOE PLAINTIFFS fell under the direction and control of GUINTO, who used his position of authority and trust over MINOR DOE PLAINTIFFS to sexually harass, molest and abuse them.

45.    GUINTO did sexually harass, molest and abuse MINOR DOE PLAINTIFFS, who were minors at the time. Such conduct was undertaken solely for GUINTO'S sexual gratification, and was performed on MINOR DOE PLAINTIFFS without their consent, as minors are unable to give valid, legal consent to such sexual acts. Such despicable actions perpetrated upon Minor PLAINTIFFS constituted conduct in violation of California *Penal Code* §647.6, and others.

46.    As students at the MIDDLE SCHOOL who at all times employed GUINTO, MINOR DOE PLAINTIFFS were under GUINTO'S direct supervision, care and control which thereby created a special relationship, fiduciary relationship, and confidential relationship with DEFENDANTS. Additionally, as minor children under the custody, care and control of DEFENDANTS, DEFENDANTS stood in loco parentis with respect to PLAINTIFFS while they were attending school and school-related functions at the MIDDLE SCHOOL, and CAMP EPIC.

47.    As the responsible parties and employers controlling GUINTO, DEFENDANTS were also in a special relationship with PLAINTIFFS, and thereby owed special duties to PLAINTIFFS.

48.    Upon information and belief, before PLAINTIFFS were sexually assaulted by GUINTO, DEFENDANTS, specifically the principal of the MIDDLE SCHOOL (and other supervisory personnel at MAKING WAVES EDUCATIONAL ENTITIES) knew or should have known that GUINTO had engaged in unlawful sexually-related conduct with minors in the past, and/or was continuing to engage in such conduct. DEFENDANTS had a duty to disclose these facts to PLAINTIFFS, their parents and others, but instead suppressed, concealed or failed to disclose this information. The duty to disclose this information arose from the special, trusting, confidential, fiduciary, and in *loco parentis* relationship between DEFENDANTS and PLAINTIFFS.

49.    DEFENDANTS failed to take reasonable steps and implement reasonable safeguards to avoid acts of unlawful sexual conduct by GUINTO, including the prevention of abuse of PLAINTIFFS by GUINTO, the avoidance of placing GUINTO in a function or environment in which contact with children was an inherent part of that function or environment. Instead, DEFENDANTS ignored and concealed the sexual abuse of PLAINTIFFS and others perpetrated by GUINTO that had already occurred. DEFENDANTS failed to properly supervise GUINTO'S classroom at the MIDDLE SCHOOL which led to many students, including PLAINTIFFS, being repeatedly sexually abused by GUINTO.

50.    DEFENDANTS similarly failed to notify PLAINTIFF PARENTS, government authorities or the State Department of Teacher Credentialing. Had DEFENDANTS timely made such disclosures/notifications, PLAINTIFFS' parents would have been in a position to prevent the abuse to their minor children or, at least, prevent the continued abuse of their minor children. Instead, DEFENDANTS ignored and concealed the sexual abuse of MINOR DOE PLAINTIFFS and others by GUINTO that had already occurred and had previously been known or suspected by the DEFENDANTS.

51.    Prior to and during the sexual harassment, molestation and abuse of the MINOR DOE PLAINTIFFS, DEFENDANTS knew or should have known that GUINTO had violated his role as a teacher, counselor, advisor and faculty member, and used this position of authority and trust while acting on behalf of DEFENDANTS to gain access to children, including MINOR DOE PLAINTIFFS on and off the school facilities and grounds. Relying on such position, GUINTO caused MINOR DOE PLAINTIFFS to touch him in a sexual manner and to allow him to touch them in a sexual manner, and as such, engaged in sexual conduct and abuse, including harassment and molestation, with such children, including MINOR DOE PLAINTIFFS.

52.    With knowledge that GUINTO had previously engaged in dangerous and inappropriate conduct with children, DEFENDANTS conspired to and did knowingly fail to take reasonable steps to prevent future, further conduct and thus failed to implement reasonable safeguards to avoid such unlawful conduct that should have included the avoidance of placing

GUINTO in a function or environment in which contact with children was an inherent aspect of that function or environment.

53.     PLAINTIFFS further allege that DEFENDANTS failed to report and in fact, hid and concealed from MINOR DOE PLAINTIFFS' parents, students, teachers, law enforcement authorities, civil authorities and others, the true facts and relevant information necessary to bring GUINTO to justice for the sexual misconduct he committed with minors, including MINOR DOE PLAINTIFFS.

54.      DEFENDANTS also implemented various measures which were designed to, and which effectively did render GUINTO'S conduct harder to detect, including:

a.  Permitting GUINTO to remain in a position of authority and trust after DEFENDANTS knew or should have known that he was a molester of children;

b.  Placing GUINTO in a separate and secluded environment, including placing him in charge of young children, afterschool programs, advising programs and youth programs which allowed him to sexually and physically interact with and abuse the children, including MINOR DOE PLAINTIFFS;

c.  Allowing GUINTO to come into contact with minors, including MINOR DOE PLAINTIFFS, without adequate supervision;

d.  Failing to inform and concealing from MINOR DOE PLAINTIFFS' parents and law enforcement officials the fact that MINOR DOE PLAINTIFFS and others were or may have been sexually abused after DEFENDANTS knew or should have known that GUINTO may have sexually abused MINOR DOE PLAINTIFFS or others, thereby enabling MINOR DOE PLAINTIFFS to continue to be endangered and sexually abused. Such concealment exacerbated the harms incurred by MINOR DOE PLAINTIFFS by prolonging and perpetuating these harms while they were in dire need of medical and mental health treatment.

e.   Holding out to MINOR DOE PLAINTIFFS and their parents, students, and to the school community at large that GUINTO was in good standing and thereby trustworthy;

f.   Failing to take reasonable steps, and failing to implement reasonable safeguards to avoid acts of unlawful sexual conduct by GUINTO with students who were minor children;

g.   Failing to put in place a system or procedure to supervise or monitor employees, volunteers, representatives or agents in order to insure that they did not molest or abuse minors in DEFENDANTS' care, including MINOR DOE PLAINTIFFS; and

h.   Allowing GUINTO to take children, including the MINOR DOE PLAINTIFFS, on unsupervised field trips to various secluded location, including camping and to motel rooms, all without any further inquiry.

55.    By his position within the DEFENDANTS' institutions, DEFENDANTS and GUINTO demanded and required that the MINOR DOE PLAINTIFFS respect GUINTO in his position of teacher, advisor, youth counselor and mentor at the MIDDLE SCHOOL, MAKING WAVES EDUCATIONAL ENTITIES, and CAMP EPIC.

56.    PLAINTIFFS are informed and believe, and on that basis allege, that there had been reports of sexual abuse and/or misconduct with children that involved or implicated GUINTO prior to the time that GUINTO was hired by MAKING WAVES EDUCATIONAL ENTITIES. In or around 2008, complaints were formally made against GUINTO with the Boy Scouts of America, Silicon Valley Monterey Bay Council who, thereafter, formally reprimanded him. At the Boy Scouts, GUINTO was placed in a position of direct contact and authority over the "Webelos" group all of whom were minor children. In this capacity, complaints were made against GUINTO for filling out parent proxy forms for two to three children, and acting as the parent participant for these children in the program. With knowledge of this, MAKING WAVES EDUCATIONAL ENTITIES disregarded such knowledge but rather hired GUINTO and thus

permitted him to continue in his teaching position at the MIDDLE SCHOOL and allowed him to continue to seclude minor students (including MINOR DOE PLAINTIFFS) and sexually abuse MIDDLE SCHOOL students for several years, unfettered and without any additional supervision, monitoring or control.

57.     PLAINTIFFS are informed and believe, and on that basis allege, that GUINTO was able to sexually abuse dozens of students as a result. Absent any action by MAKING WAVES EDUCATIONAL ENTITIES' administration to supervise or restrain GUINTO, he continued his rampant sexual abuse of minor students, robbing them of their trust, peace of mind, innocence, and childhood. Serial sexual abuse of the nature, duration and extent of that which was engaged in by GUINTO could not have been accomplished without the aid, assistance, or patent disregard of MAKING WAVES EDUCATIONAL ENTITIES staff and/or administration officials. During GUINTO'S tenure at MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC, he sexually abused dozens of children over a period of approximately eight years. Supervisory Personnel at MAKING WAVES EDUCATIONAL ENTITIES were aware, or should have been aware, of the allegations of sexual abuse of minors against GUINTO and failed to report said allegations to law enforcement or child protective services, as they were mandated to do under California law. As a direct result of DEFENDANTS' failures to report these allegations of sexual abuse of minors against GUINTO, GUINTO was allowed to remain as a schoolteacher at the MIDDLE SCHOOL where he went on to sexually abuse numerous minor children, including MINOR DOE PLAINTIFFS.

58.     PLAINTIFFS are informed and believe, and on that basis allege that GUINTO used his position as a teacher at the MIDDLE SCHOOL to recruit young, minor children to go on unsupervised camping trips with him through CAMP EPIC. Meetings regarding these camping trips were held on-campus at the MIDDLE SCHOOL, were conducted with the knowledge of Supervisory Personnel at the MIDDLE SCHOOL, and were expressly permitted by Supervisory Personnel at the MIDDLE SCHOOL. Permission slips from the MAKING WAVES EDUCATIONAL ENTITIES were distributed to parents of children going on the trips,

so that the parents of minor students (including MINOR DOE PLAINTIFFS) were reasonably led to believe that MAKING WAVES EDUCATIONAL ENTITIES was sponsoring these trips through CAMP EPIC, and that the trips were sanctioned through MAKING WAVES EDUCATIONAL ENTITIES. Furthermore, GUINTO would frequently speak about the camping trips (and other extracurricular activities) on-campus at the MIDDLE SCHOOL, and he would lure students to go on the trip through promises of scholarships and other educational opportunities.

59.    MAKING WAVES EDUCATIONAL ENTITIES intentionally ignored multiple complaints regarding GUINTO that perpetuated GUINTO'S ability to abuse children for several years.

60.    In addition, there were multiple "red flags" regarding GUINTO'S behavior that alerted or should have alerted MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC of GUINTO'S inappropriate behavior and sexual abuse of children, including:

      a.   GUINTO frequently taking minor children on camping trips to remote locations;

      b.   GUINTO'S use of false, forged and fraudulent permission slips from MAKING WAVES EDUCATIONAL ENTITIES to obtain parental permission and seclude minor children on remote trips;

      c.   Prior complaints made against GUINTO at the Boy Scouts of America, wherein GUINTO improperly obtained parental proxies to become a parental participant for minor children.

61.    DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES' Parent Student Handbook states "As MWA continues to grow and evolve and as new, unexplored situations present themselves, rules may be added or changed in order to provide a safe and productive environment for all."

62.    DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES represents in the Making Waves Parent Student Handbook:

"Study Trips Throughout the year, students will (depending on good academic standing) participate in various field trips. Field trips are meant to reinforce MWA's Core Values, while exposing students to different social and intellectual experiences. Some field trips may require a small fee, while others will be free of charge. No student will be prevented from making the field trip or excursion because of lack of sufficient funds. Please reference the field trip policy for the specific field trip."

## FACTUAL ALLEGATIONS APPLICABLE TO ALL MINOR PLAINTIFFS

63.     The incidents of abuse alleged herein took place while MINOR DOE PLAINTIFFS were under the direct control and supervision of GUINTO in his capacity and position as teacher, counselor and mentor at MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC, and while acting specifically on behalf of DEFENDANTS.

64.     GUINTO was at all times relevant to this Complaint, a teacher, counselor, advisor, youth counselor and mentor at the MIDDLE SCHOOL and CAMP EPIC, institutions wholly operated by MAKING WAVES EDUCATIONAL ENTITIES.

65.     While GUINTO sexually harassed, molested and abused PLAINTIFFS, DEFENDANTS were well aware that GUINTO took an unusual interest in and spent an inordinate amount of time with PLAINTIFFS, both on and off campus.

66.     Facts Regarding the Sexual Harassment and Abuse of Plaintiff MINOR DOE 1:

   a.   On or around October 26, 2013, GUINTO sexually harassed, abused and molested MINOR DOE I, who was a minor at the time. GUINTO engaged in such activities with Plaintiff while acting in the course and scope of his employment, agency, duties and responsibilities with DEFENDANTS, in such locations as the MAKING WAVES EDUCATIONAL ENTITIES permitted camping trip to South Lake Tahoe with CAMP EPIC. MINOR DOE 1, a minor who was born on May 5, 2002, attended the MIDDLE SCHOOL in or around October of 2013. GUINTO engaged MINOR DOE I in the course and scope of his duties as a teacher, advisor and mentor. GUINTO spent long periods of time with MINOR DOE both on and off of the MIDDLE SCHOOL premises. GUINTO sexually harassed, abused and molested MINOR DOE 1 on or around October 26, 2013. The sexual harassment,

abuse and molestation of MINOR DOE 1 included but was not limited to: GUINTO fondling MINOR DOE I; GUINTO promising to take MINOR DOE I camping and then bringing him to a motel room with other minor children; GUINTO touching MINOR DOE I in the middle of the night; GUINTO attempting to take the shorts of MINOR DOE 1 off; and GUINTO demanding that MINOR DOE I take his clothes off. These were among other inappropriate and offensive acts perpetrated by GUINTO. Additionally, GUINTO emotionally abused MINOR DOE 1 by threatening and coercing him not to discuss the abuse. As a result of the sexual harassment, molestation and abuse by GUINTO, MINOR DOE 1 has suffered extensive physical, psychological and emotional damages. The sexual harassment, molestation and abuse of MINOR DOE 1 occurred as a result not only of GUINTO'S actions, but because of the action and inactions of the MAKING WAVES EDUCATIONAL ENTITIES and their employees, administrators and agents, in failing to properly hire, train, retain, and supervise GUINTO and in failing to prevent him from harming MINOR DOE 1. At no time did DEFENDANTS or any of them take any action to restrict GUINTO'S access to and interaction with minors, including PLAINTIFF MINOR DOE 1. In fact, DEFENDANTS' conduct made it a virtual certainty that PLAINTIFF MINOR DOE 1 and other minors would be victimized;

b. Subsequent to the sexual abuse of PLAINTIFF MINOR DOE I at the hands of GUINTO, MINOR DOE I began to experience multiple mental, emotional and psychological problems due to the sexual harassment, molestation and abuse, including, but not limited to: social isolation, anxiety, depression, feelings of helplessness, moodiness, poor concentration, insomnia, and significant trust and control issues. It was then that PLAINTIFF MINOR DOE 1 for the first time, began to discover that his mental and/or emotional issues were and are in some

1  way caused by the childhood sexual harassment, molestation and abuse he
2  suffered at the hands of GUINTO;

3  67.  Facts Regarding the Sexual Harassment and Abuse of Plaintiff MINOR DOE 2:

4  a.  In or around October 19, 2013, GUINTO sexually harassed, abused and molested
5  MINOR DOE 2, who was a minor at the time. GUINTO engaged in such
6  activities with Plaintiff while acting in the course and scope of his employment,
7  agency, duties and responsibilities with DEFENDANTS, in such locations as the
8  MAKING WAVES EDUCATIONAL ENTITIES permitted camping trip with
9  CAMP EPIC. MINOR DOE 2, a minor who was born on September 13, 2002,
10  attended the MIDDLE SCHOOL in or around October of 2013. GUINTO
11  engaged MINOR DOE 2 in the course and scope of his duties as a teacher advisor
12  and mentor. GUINTO spent long periods of time with MINOR DOE 2 both on
13  and off of the physical premises of the MIDDLE SCHOOL. GUINTO sexually
14  harassed, abused and molested MINOR DOE 2 on or around October 19, 2013.
15  The sexual harassment, abuse and molestation of MINOR DOE 2 included but is
16  not limited to: GUINTO fondling MINOR DOE 2 in a sexual manner, among
17  other inappropriate and offensive acts by GUINTO. As a result of the sexual
18  harassment, molestation and abuse by GUINTO, MINOR DOE 2 has suffered
19  extensive physical, psychological and emotional damages. MINOR DOE 2's
20  sexual harassment, molestation and abuse occurred as a result of not only
21  GUINTO'S actions, but because of the action and inaction of the MAKING
22  WAVES EDUCATIONAL ENTITIES and their employees, administrators and
23  agents, in failing to properly hire, train, retain, and supervise GUINTO and in
24  failing to prevent him from harming MINOR DOE 2. At no time did
25  DEFENDANTS or any of them take any action to restrict GUINTO'S access and
26  interaction with minors, including MINOR DOE 2. In fact, DEFENDANTS

27

conduct made it a virtual certainty that PLAINTIFF and other minors would be victimized.

b. Subsequent to the sexual abuse of MINOR DOE 2 at the hands of GUINTO, he began to experience multiple mental, emotional and psychological problems, due to the sexual harassment, molestation and abuse, including, but not limited to: social isolation, anxiety, depression, feelings of helplessness, moodiness, poor concentration, insomnia, and significant trust and control issues. It was then that Plaintiff MINOR DOE 2 for the first time began to discover that his mental and/or emotional issues were and are in some way caused by the childhood sexual harassment, molestation and abuse he suffered at the hands of GUINTO;

68. Facts Regarding the sexual Harassment and Abuse of Plaintiff MINOR DOE 3:

a. From on or about March 2013 to approximately October 2013, GUINTO sexually harassed, abused and molested MINOR DOE 3, who was a minor at the time, while taking him on camping trips to Angel Island, California, South Lake Tahoe, California, and other locations. GUINTO engaged in such activities with Plaintiff while acting in the course and scope of his employment and agency with MAKING WAVES EDUCATIONAL ENTITIES while carrying out his duties and responsibilities with DEFENDANTS, in such locations as permitted by MAKING WAVES EDUCATIONAL ENTITIES including unsupervised camping trips with CAMP EPIC. MINOR DOE 3, a minor who was born on Mach 22, 2002, attended the MIDDLE SCHOOL from early 2013 until in or around November of 2013. GUINTO engaged with MINOR DOE 3 in the course and scope of his duties as a teacher, advisor and mentor. GUINTO spent long periods of time with MINOR DOE 3 both on and off of the physical premises of the MIDDLE SCHOOL. GUINTO sexually harassed, abused and molested MINOR DOE 3 from on or around March 2013 through in or around October 2013. The sexual harassment, abuse and molestation of MINOR DOE 3 included

but is not limited to the following, as well as among other inappropriate and offensive acts: GUINTO fondling MINOR DOE 3, GUINTO sleeping in the same sleeping bag as MINOR DOE 3, GUINTO requiring MINOR DOE 3 to urinate in front of GUINTO, and GUINTO making MINOR DOE 3 take his shirt off. As a result of the sexual harassment, molestation and abuse by GUINTO, MINOR DOE 3 has suffered extensive physical, psychological and emotional damages. MINOR DOE 3's sexual harassment, molestation and abuse occurred as a result not only of GUINTO'S actions, but because of the action and inactions of the MAKING WAVES EDUCATIONAL ENTITIES and their employees, administrators and agents, in failing to properly hire, train, retain, and supervise GUINTO and in failing to prevent him from harming MINOR DOE 3. At no time did DEFENDANTS or any of them take any action to restrict GUINTO'S access to and interaction with minors, including MINOR DOE 3. In fact, DEFENDANTS' conduct made it a virtual certainty that PLAINTIFF and other minors would be victimized;

b. Subsequent to the sexual abuse of MINOR DOE 3 at the hands of GUINTO, MINOR DOE 3 began to experience multiple mental, emotional and psychological problems, due to the sexual harassment, molestation and abuse he incurred including, but not limited to: social isolation, anxiety, depression, feelings of helplessness, moodiness, poor concentration, insomnia, and significant trust and control issues. It was then that Plaintiff MINOR DOE 3 for the first time began to discover that his mental and/or emotional issues were and are in some way caused by the childhood sexual harassment, molestation and abuse he suffered at the hands of GUINTO.

69.     As set forth more fully herein above, GUINTO did sexually harass, molest and abuse MINOR DOE PLAINTIFFS 1 through 3, who were minors at the time. Such conduct by GUINTO was based upon Minor PLAINTIFFS' gender, and was done for his sexual gratification.

These actions upon MINOR DOE PLAINTIFFS were performed by GUINTO without the free consent of MINOR DOE PLAINTIFFS, who were minors. These actions upon MINOR DOE PLAINTIFFS constitute conduct in violation of California *Penal Code* § 647.6 and others.

70.     As a direct result of the sexual harassment, molestation and abuse of MINOR DOE PLAINTIFFS by GUINTO, MINOR DOE PLAINTIFFS have difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over MINOR DOE PLAINTIFFS, and in intimate, confidential and familial relationships, due to the trauma of childhood sexual harassment, molestation and abuse inflicted upon them by DEFENDANTS. This inability to interact and hold any semblance of trust and confidence in others has caused MINOR DOE PLAINTIFFS substantial emotional distress, anxiety, nervousness and fear. As a direct result of PLAINTIFFS' molestation by GUINTO, MINOR DOE PLAINTIFFS experienced severe issues with their personal life, including issues with trust and difficulties in maintaining meaningful familial relationships and friendships. These feelings have caused MINOR DOE PLAINTIFFS substantial emotional distress, anxiety, nervousness and fear.

71.     As a direct and proximate result of the DEFENDANTS' tortuous acts, omissions, wrongful conduct and/or breaches of their duties, whether willful or negligent, PLAINTIFFS' future employment and personal development has been adversely affected. MINOR DOE PLAINTIFFS will lose wages as a result of the abuse they suffered at the hands of DEFENDANTS in an amount to be determined at trial. MINOR DOE PLAINTIFFS have suffered economic injury, all to MINOR DOE PLAINTIFFS' general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

72.     DEFENDANTS should have been aware of GUINTO'S wrongful conduct at or about the time it was occurring, and thereafter, but took no action to curtail, inhibit or stop such continuing conduct, or to help prevent Minor PLAINTIFFS from enduring the trauma from such conduct. Despite the authority and ability to do so, DEFENDANTS refused to, and did not act

effectively to stop the sexual assaults on Minor PLAINTIFFS, nor inhibit or obstruct such abuse, or to protect Minor Plaintiff's from the results of that trauma.

73.     During the period of abuse of MINOR DOE PLAINTIFFS at the hands of GUINTO, DEFENDANTS had the authority and ability to obstruct or stop GUINTO'S sexual assaults on MINOR DOE PLAINTIFFS, but failed to do so, thereby allowing the abuse to occur and to continue unabated. This failure was a part of DEFENDANTS' plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and abuse, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement. Such actions were motivated by a desire to protect the reputation of DEFENDANTS, and to protect the monetary support of DEFENDANTS while fostering an environment where such abuse could continue to occur.

74.     As is set forth herein, DEFENDANTS and each of them have failed to uphold numerous mandatory duties imposed upon them by state and federal law, and by written policies and procedures applicable to DEFENDANTS, including but not limited to the following:

      a.  Duty to use reasonable care to protect students from known or foreseeable dangers *(Government Code* §§ 820, 815.2);

      b.  Duty to refrain from taking official action that contradicts the provisions of Article 1, § 28(c) of the California· Constitution;

      c.  Duty to enact policies and procedures that are not in contravention of the Federal Civil Rights Act, § 19 & 3, and the 14th Amendment of the United States Constitution;

      d.  Duty to protect students and staff, and provide adequate supervision;

      e.  Duty to ensure that any direction given to faculty and students *is* lawful, and that adults act fairly, responsibly and respectfully towards faculty and students;

f.  Duty to properly train teachers, athletic directors, athletic coaches, youth counselors, mentors, administrators, and staff so that they are aware of their individual responsibility for creating and maintaining a safe environment;

g.  Duty to supervise faculty and students and enforce rules and regulations prescribed for schools, exercise reasonable control over students as is reasonably necessary to maintain order, protect property, or protect the health and safety of faculty and students or to maintain proper and appropriate conditions conducive to learning;

h.  Duty to exercise careful supervision of the moral conditions in the school;

i.  Duty to hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds or during recess;

j.  Duty to properly monitor students, prevent or correct harmful situations or call for help when a situation is beyond their control;

k.  Duty to ensure that personnel are actually on hand and supervising students;

l.  Duty to provide enough supervision to students;

m.  Duty to supervise diligently;

n.  Duty to act promptly and diligently and don't ignore or minimize problems;

o.  Duty to refrain from violating PLAINTIFFS' right to protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations (*Civil Code* § 43);

p.  Duty to abstain from injuring the person or property of PLAINTIFFS, or infringing upon any of his rights (*Civil Code* § 1708);

q.  Duty to report suspected incidents of child abuse and more specifically childhood sexual abuse (*Penal Code* §§ 11166, 11167); and Duty to establish various school safety and violence prevention programs (*Education Code* §§ 32228, 32228.5, 35294.1035294.15).

75.     Compulsory education laws create a special relationship between students and DEFENDANTS, and students have a constitutional guarantee to a safe, secure and peaceful school environment. DEFENDANTS and each of them failed to acknowledge unsafe conditions, and therefore failed to guarantee safe surroundings in an environment in which MINOR DOE PLAINTIFFS were not free to leave, specifically including but not limited to allowing GUINTO to take children for purposes of sexual activity and allowing GUINTO to operate in isolated environments, incapable of monitoring from the outside, wherein GUINTO sexually harassed, molested and abused MINOR DOE PLAINTIFFS and others.  DEFENDANTS had and have a duty to protect students, including MINOR DOE PLAINTIFFS.

76.     DEFENDANTS were required to, but failed to provide adequate campus and off-site school event supervision, and failed to be properly vigilant in seeing that supervision was sufficient to ensure the safety of MINOR DOE PLAINTIFFS and others.

77.     DEFENDANTS imbued GUINTO with the color of authority through which he was able to influence, direct and abuse PLAINTIFFS and others, and to act illegally, unreasonably and without respect for the person and safety of Minor PLAINTIFFS.

78.     DEFENDANTS had a duty to and failed to adequately train and supervise all counselors, advisors, teachers, coaches, mentors and staff to create a positive, safe, spiritual and educational environment, specifically including training to perceive, report, and stop inappropriate conduct by other members of the staff, including GUINTO, with children. DEFENDANTS had a duty to and failed to enact and enforce rules and regulations prescribed for schools, and execute reasonable control over students necessary to protect the health and safety of them and to maintain proper and appropriate conditions conducive to learning.

79.     DEFENDANTS were required to and failed to exercise careful supervision of the moral conditions in their school, as well as adequate supervision before and after school. This duty extended beyond the classroom.

80.     In subjecting PLAINTIFFS to the wrongful treatment herein described, DEFENDANTS MAKING WAVES EDUCATIONAL ENTITIES, CAMP EPIC, and GUINTO

acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS' rights, so as to constitute malice and oppression under California *Civil Code* §3294. PLAINTIFFS are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against MAKING WAVES EDUCATIONAL ENTITIES, CAMP EPIC, and GUINTO, in a sum to be shown according to proof.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL PLAINTIFF PARENTS

81.    MINOR DOE PLAINTIFFS' students have a liberty interest in bodily integrity under substantive due process of the Fourteenth Amendment, including the right to be free from sexual abuse by school employees.[7] PLAINTIFF PARENTS of MINOR DOE PLAINTIFFS have a Fourteenth Amendment substantive due process liberty interest in the health, safety and education of their children. DEFENDANTS unreasonably interfered and deprived PLAINTIFF PARENTS of their liberty as parents to direct the upbringing and education, health, and safety by showing a deliberate indifference to known sexual harassment, and sexual molestation, and sexual conduct by GUINTO with PLAINTIFF PARENTS' minor school children.[8]

82.    It is clearly established that when the MAKING WAVES EDUCATIONAL ENTITIES, a governmental agency, takes custody of school children like MINOR DOE PLAINTIFFS and permits them to go on field trips with DEFENDANT GUINTO without further adult supervision, the Constitution imposes upon them a corresponding duty to assume some responsibility for the minor children's safety and general wellbeing. When asserting this

---

[7] *Rutherford v. City of Berkeley,* 780 F.2d 1444, 1447 (9th Cir.1986)

[8] *Keyes v. Sch. Dist., 413 U.S. 189, 246,* the government cannot *"*unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. . . . The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Keyes v. Sch. Dist., 413 U.S. 189, 246*

type of custody and control over MINOR DOE PLAINTIFFS and failing to provide for their safety from sexual molestation, the MAKING WAVES EDUCATIONAL ENTITIES transgress the substantive limits on state action set by the Due Process Clause. It is also clearly established that this special relationship doctrine applies to children in charter schools. Once MAKING WAVES EDUCATIONAL ENTITIES assumed custody and control over MINOR DOE PLAINTIFFS, the DEFENDANTS owed the children, as part of these minors' protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the children. DEFENDANTS failed to protect MINOR DOE PLAINTIFFS and failed to inform PLAINTIFF PARENTS that DEFENDANTS were not providing adequate protection for MINOR DOE PLAINTIFFS, depriving PLAINTIFF PARENTS of their liberty interest to take measures to protect their children.

**DELAYED DISCOVERY**

83.    On June 28, 2017, during medical evaluations at Stanford University, PLAINTIFF PARENTS discovered the nature and extent of the molestation of their children and at that time, learned that their rights under the United States Constitution were violated. PLAINTIFF PARENTS also discovered and made reasonable associations at that time of the health effects to themselves and their children caused by DEFENDANTS. PLAINTIFF MINOR DOES have been too traumatized, ashamed, embarrassed, humiliated, depressed and debilitated by Post-Traumatic Stress Disorder ("PTSD") to confide in their parents the facts of their victimization. Equitable tolling of any statute of limitations is applicable to PLAINTIFF PARENTS' claims because after exercising all due diligence, PLAINTIFFS did not and could not discover the nature of their claims and damages before the date of discovery.

84.    Despite having knowledge of the predatory conduct of its employee GUINTO, DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES failed to take protective action to shield PLAINTIFF MINOR DOES from the sexual molestation but rather continued to allow PLAINTIFF MINOR DOES to go on field trips with DEFENDANT GUINTO after actual knowledge that GUINTO was molesting boys, including MINOR DOES PLAINTIFFS. Thus, by

having held a non-delegable duty, DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES is liable for ALL PLAINTIFFS' damages, injuries and harm.

85.    WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

## FEDERAL CLAIMS

### FIRST CAUSE OF ACTION
**Against Alton B. Nelson, Jr.**
**Chief Executive Officer, Dr. Evangelia Ward-Jackson**
**Middle School Director (Principal), Libby Cole**
**Chief of Staff,**
**(Supervisory Liability for Section 1983 Violations Negligent Training and Supervision)**

86.    PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

87.    At all relevant times to the acts complained of herein, DEFENDANTS, and each of them, acted pursuant to lawful authority and under the color of law.

88.    Prior to and after the first incident of GUINTO'S sexual harassment, molestation and abuse of MINOR DOE PLAINTIFFS, through the present, DEFENDANTS knew or should have known that GUINTO had been or was capable of sexually, physically, and mentally abusing PLAINTIFFS or other victims.

89.    DEFENDANTS had special duties to protect the minor PLAINTIFFS and the other students within MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC, when such students were entrusted to their care by their parents. PLAINTIFFS' care, welfare and physical custody were entrusted to DEFENDANTS. DEFENDANTS voluntarily accepted the entrusted care of MINOR DOE PLAINTIFFS. As such, DEFENDANTS owed MINOR DOE PLAINTIFFS, minor children, a special duty of care, in addition to a duty of ordinary care, and owed MINOR DOE PLAINTIFFS the higher duty of care that adults dealing with children owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between DEFENDANTS and MINOR DOE PLAINTIFFS.

90.     MINOR DOE PLAINTIFFS invested great trust, faith and confidence in DEFENDANTS, including GUINTO, as their teachers, advisers and mentors.

91.     DEFENDANTS breached their duties of care to the MINOR DOE PLAINTIFFS by allowing GUINTO to come into contact with the PLAINTIFFS and other students without supervision; by failing to adequately hire, supervise and retain GUINTO whom they permitted and enabled to have access to MINOR DOE PLAINTIFFS; by failing to investigate or otherwise confirm or deny such facts about GUINTO; by failing to inform and/or by concealment from PLAINTIFFS, their parents, guardians and law enforcement officials that GUINTO was or may have been sexually harassing, molesting and  abusing minors; by failing to inform and/or by concealment from MINOR DOE PLAINTIFFS' parents, guardians or law enforcement officials that MINOR DOE PLAINTIFFS were or may have been sexually harassed, molested and abused after DEFENDANTS knew or should have known that GUINTO may have sexually harassed, molested and abused MINOR DOE PLAINTIFFS or others, thereby enabling MINOR DOE PLAINTIFFS to continue to be endangered and sexually harassed, molested and abused. These breaches resulted in creating circumstances where MINOR DOE PLAINTIFFS were less likely to receive medical/mental health care or treatment, thus exacerbating the harm done to MINOR DOE PLAINTIFFS. Additionally, by holding out that GUINTO was in good standing and thereby trustworthy, DEFENDANTS cloaked GUINTO with a facade of normalcy which disguised the true nature of the sexual harassment, molestation and abuse and contact.

92.     DEFENDANTS breached their duty to MINOR DOE PLAINTIFFS by, *inter alia*, failing to investigate or otherwise confirm or deny such facts, failing to reveal such facts to Minor PLAINTIFFS, the community of the school, students, minors, and law enforcement agencies, which placed and continuing to place GUINTO in positions of trust and authority within MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC.

93.     DEFENDANTS breached their duty to MINOR DOE PLAINTIFFS by, *inter alia*, failing to adequately monitor and supervise GUINTO and stopping GUINTO from committing wrongful sexual acts with minors, including MINOR DOE PLAINTIFFS. This belief is founded

on the fact that MINOR DOE PLAINTIFFS were informed and believed that the employees and staff of MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC had suspected the abuse was occurring at the time, and failed to investigate the matter further. Based on these facts, DEFENDANTS knew or should have known of GUINTO'S incapacity to supervise, and should have stopped employees of DEFENDANTS from committing wrongful sexual acts with minors.

## NEGLIGENT SUPERVISION

94.    As an educational institution for minors, where all of the students are entrusted to the teachers, counselors, advisors, mentors, coaches, faculty members and administrators, MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC expressly and implicitly represented that these individuals, including GUINTO, were not a sexual threat to children and others who would fall under GUINTO'S influence, control, direction, and guidance.

95.    DEFENDANTS negligently failed to supervise GUINTO in his position of trust and authority as teacher, teacher's assistant, counselor and mentor, and/or other authority figure, where he was able to commit wrongful acts against the MINOR DOE PLAINTIFFS. DEFENDANTS failed to provide reasonable supervision of GUINTO. DEFENDANTS further failed to take reasonable measures to prevent sexual harassment, molestation and abuse of minors, including MINOR DOE PLAINTIFFS.

96.    At no time during the periods of time alleged did DEFENDANTS have in place a system or procedure to reasonably investigate, supervise and monitor teachers, including GUINTO, to prevent pre-sexual grooming and sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minor students and others in DEFENDANTS' care.

97.    DEFENDANTS were or should have known to be aware and understand how vulnerable children were to sexual harassment, molestation and abuse by counselors, advisors, mentors, coaches, teachers and other persons of authority.

98.     DEFENDANTS' conduct was a breach of their duties to MINOR DOE PLAINTIFFS.

99.     DEFENDANTS breached their duty to MINOR DOE PLAINTIFFS by, *inter alia*, failing to adequately monitor and supervise GUINTO and stopping GUINTO from committing wrongful sexual acts with minors, including MINOR DOE PLAINTIFFS. This belief is founded on the fact that employees and staff of MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC, including Supervisory Personnel, had suspected the abuse was occurring at the time, and failed to investigate into the matter further. Based on these facts, DEFENDANTS knew or should have known of GUINTO'S incapacity to supervise and should have stopped employees of DEFENDANTS from committing wrongful sexual acts with minors.

## **NEGLIGENT HIRING/RETENTION**

100.     By virtue of MINOR DOE PLAINTIFFS' special relationship with DEFENDANTS and DEFENDANTS' relation to GUINTO. DEFENDANTS owed MINOR DOE PLAINTIFFS a duty to not hire and retain GUINTO, given his dangerous and exploitive propensities, which DEFENDANTS knew or should have known, had they engaged in a meaningful and adequate investigation of his background prior to his hiring.

101.     As an educational institution and operator of a school, where all of the students are minors entrusted to the schools and its employees and agents, DEFENDANTS expressly and implicitly represented that the counselors, advisors, mentors, coaches, teachers and others, including GUINTO, were not a sexual threat to children and others who would fall under GUINTO'S influence, control, direction, and guidance.

102.     At no time during the periods of time alleged did DEFENDANTS have in place a system or procedure to reasonably investigate, supervise and monitor teachers, including GUINTO, to prevent pre-sexual grooming and sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minors, students and others in DEFENDANTS' care.

103.    DEFENDANTS were or should have known to be aware of and understand how vulnerable children were to sexual harassment, molestation and abuse by teachers and other persons of authority within the control of DEFENDANTS.

104.    DEFENDANTS were put on notice, and should have known that GUINTO had previously engaged in dangerous and inappropriate conduct, and that it was, or should have been foreseeable that he was engaging, or would engage in illicit sexual activities with Minor PLAINTIFFS, and others, under the cloak of the authority, confidence, and trust, bestowed upon him through DEFENDANTS.

105.    DEFENDANTS were placed on notice that GUINTO had engaged in dangerous and inappropriate conduct, both before his employment within DEFENDANTS, and during that employment. MINOR DOE PLAINTIFFS are informed, and thereon allege, that other third parties, minors, students, law enforcement officials and parents informed DEFENDANTS of inappropriate conduct committed by GUINTO.

106.    Even though DEFENDANTS knew or should have known of these activities by GUINTO, DEFENDANTS failed to use reasonable care in investigating GUINTO and did nothing to reasonably investigate, supervise or monitor GUINTO to ensure the safety of the minor students.

107.    DEFENDANTS' conduct was a breach of their duties to MINOR DOE PLAINTIFFS.

**NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE**

108.    DEFENDANTS owed MINOR DOE PLAINTIFFS a duty to take reasonable protective measures to protect PLAINTIFFS and other minor students from the risk of childhood sexual harassment, molestation and abuse by GUINTO by properly warning, training or educating MINOR DOE PLAINTIFFS and other students about how to avoid such a risk.

109.    DEFENDANTS breached their duty to take reasonable protective measures to protect MINOR DOE PLAINTIFFS and other minor students from the risk of childhood sexual

harassment, molestation and abuse by GUINTO, such as the failure to properly warn, train or educate PLAINTIFFS and other students about how to avoid such a risk.

110.    DEFENDANTS breached their duty to take reasonable protective measures to protect MINOR DOE PLAINTIFFS and other minor students from the risk of childhood sexual harassment, molestation and abuse by GUINTO, by failing to supervise and stop employees of DEFENDANTS, including GUINTO, from continuing wrongful sexual acts with minors, including PLAINTIFFS.

### NEGLIGENCE *PER SE-PENAL* CODE MANDATORY CHILD ABUSE REPORTING

111.    Under the Child Abuse and Neglect Reporting Act, DEFENDANTS were child care custodians and were under a statutory duty to report known or suspected incidents of sexual molestation or abuse of minors to a child protective agency, pursuant to California *Penal Code* § 11166, and/or not to impede the filing of any such report.

112.    DEFENDANTS knew or should have known that their agent, employee, counselor, advisor and mentor, GUINTO had sexually molested, abused or caused touching, battery, harm, and other injuries to minors, including PLAINTIFFS, giving rise to a duty to report such conduct under California *Penal Code* § 11166.

113.    DEFENDANTS knew, or should have known, in the exercise of reasonable diligence, that an undue risk to minors, including MINOR DOE PLAINTIFFS, existed because DEFENDANTS and their agents did not comply with California's mandatory reporting requirements.

114.    By failing to report the continuing molestations and abuse, which DEFENDANTS knew of or should have known of, and by ignoring the fulfillment of the mandated compliance with the reporting requirements provided under California *Penal Code* §11166. DEFENDANTS created the risk and danger contemplated by the Child Abuse and Neglect Reporting Act and as a result, unreasonably and wrongfully exposed MINOR DOE PLAINTIFFS and other minors to sexual molestation and abuse.

115.    MINOR DOE PLAINTIFFS were members of the class of persons for whose protection California *Penal Code* § 11166 was specifically adopted.

116.    Had DEFENDANTS adequately reported the molestation of MINOR DOE PLAINTIFFS and other minors as required by California *Penal Code* § 11166 further harm to MINOR DOE PLAINTIFFS and other minors would have been avoided.

117.    As a proximate result of DEFENDANTS' failure to follow the mandatory reporting requirements of California *Penal Code* § 111 66, DEFENDANTS wrongfully denied MINOR DOE PLAINTIFFS and other minors the intervention of child protection services. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the molestation of MINOR DOE PLAINTIFFS by GUINTO.

118.    The physical, mental, and emotional damages and injuries resulting from the sexual molestation of PLAINTIFFS by GUINTO were the type of occurrence and injuries that the Child Abuse and Neglect Reporting Act were designed to prevent.

119.    As a result, DEFENDANTS' failure to comply with the mandatory reporting requirements of California *Penal Code* § 11166 also constituted a *per se* breach of DEFENDANTS' duties to MINOR DOE PLAINTIFFS.

## NEGLIGENCE *PER* SE - EDUCATION CODE SAFETY AND VIOLENCE PROGRAMS

120.    Under the Education Code *(Education Code* §§ 32228, 32228.5, 35294.10-35294.15), DEFENDANTS had a duty to establish various school safety and violence prevention programs designed to protect minor students such as MINOR DOE PLAINTIFFS from the sexually exploitive acts of serial predators such as GUINTO.

121.    DEFENDANTS knew or should have known that their agent, employee, counselor, advisor and mentor, GUINTO, was engaging in sexually exploitive acts with MINOR DOE PLAINTIFFS.

122.    DEFENDANTS knew, or should have known in the exercise of reasonable diligence, that an undue risk to minors, including MINOR DOE PLAINTIFFS, existed because

DEFENDANTS did not comply with California's Education Code school safety and protection requirements.

123.   By failing to adhere to the Education Code's school safety and protection requirements, DEFENDANTS created the risk and danger contemplated by the Education Code and as a result, unreasonably and wrongfully exposed MINOR DOE PLAINTIFFS and other minors to sexual molestation and abuse.

124.   MINOR DOE PLAINTIFFS were members of the class of persons for whose protection the Education Code's school safety and violence protection programs were specifically adopted to protect.

125.   Had DEFENDANTS established various school safety and violence prevention programs designed to protect minor students such as Minor PLAINTIFFS from the sexually exploitive acts of serial predators such as GUINTO, further harm to MINOR DOE PLAINTIFFS and other minors would have been avoided.

126.   As a proximate result of DEFENDANTS' failure to establish various school safety and violence prevention programs designed to protect minor students such as MINOR DOE PLAINTIFFS from the sexually exploitive acts of serial predators such as GUINTO, DEFENDANTS wrongfully denied MINOR DOE PLAINTIFFS and other minors the benefit of the protection of such programs.

127.   The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Minor PLAINTIFFS by GUINTO, were the type of occurrence and injuries that the Education Code's school safety and violence prevention programs were designed to prevent.

128.   As a result, DEFENDANTS' failure to comply with the Education Code's school safety and violence prevention programs also constituted a *per se* breach of DEFENDANTS' duties to MINOR DOE PLAINTIFFS.

129.   As a result of the above-described conduct, MINOR DOE PLAINTIFFS suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical

1    manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation,

2    and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will

3    continue to be prevented from performing daily activities and obtaining the full enjoyment of

4    life; will sustain loss of earnings and earning capacity, and have incurred and will continue to

5    incur expenses for medical and psychological treatment, therapy, and counseling.

6         WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

7                          **SECOND CAUSE OF ACTION**
                              **AGAINST ALL DEFENDANTS**
8                      **(42 U.S.C. 1983 Violation of Due Process**
                          **Liberty Interest Fourteenth Amendment)**
9

10        130.   PLAINTIFFS re-allege and incorporate by reference herein each and every

11   allegation contained herein above as though fully set forth and brought in this cause of action.

12        131.   At all relevant times to the acts complained of herein, DEFENDANTS, and each

13   of them, acted pursuant to lawful authority and under the color of law.

14        132.   DEFENDANTS, and each of them, deprived PLAINTIFF PARENTS of their

15   Liberty Interest, violating their Fourteenth Amendment Rights.

16        133.   DEFENDANTS conduct caused and continue to cause PLAINTIFFS damages,

17   economic and non-economic, and other injuries and harms, including, but not limited to, pain,

18   suffering, anxiety, humiliation, loss of enjoyment of live, depression, fear, inconvenience, and

19   misery. DEFENDANTS conduct was fraudulent, intentional, malicious, oppressive, and done

20   with reckless disregard of PLAINTIFFS' rights, safety, and health, entitling to PLAINTIFFS to

21   punitive damages for public safety and to protect the public from such harm in the future.

22        WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

23                          **THIRD CAUSE OF ACTION**
                              **AGAINST ALL DEFENDANTS**
24                     **(42 U.S.C. 1983 Violation of Title IX)**

25        134.   PLAINTIFFS re-allege and incorporate by reference herein each and every

26   allegation contained herein above as though fully set forth and brought in this cause of action.

27

135.    DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES violated Title IX of the Education Amendments of 1972 ("Title IX") providing in pertinent part that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX encompasses  sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district. *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 75-76, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992). In a teacher to student sexual harassment case, the student must show that the harassing conduct was so severe or pervasive that the student was deprived of access to the education benefits provided by the school. See *Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006). However, damages for a teacher's sexual harassment of a student may not be recovered "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago* Vista Independent School Dist., 524 U.S. 274, 277, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). Courts do not impose "liability on 'principles of respondeat superior or constructive notice,' instead demanding actual notice to an official of the defendant*." Oden v. N. Marianas College*, 440 F.3d 1085, 1089 (9th Cir. 2006). Accordingly, in order to proceed on a claim under Title IX for teacher-to-student harassment,   "the student must establish: (1) she or he was subjected to a sexually hostile environment or quid pro quo sexual harassment; (2) she or he provided actual notice of the situation to an 'appropriate person,' who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination; and (3) the institution's response to the harassment amounted to 'deliberate indifference.'" *Garcia v. Clovis Unified School Dist*., 627 F. Supp. 2d 1187, 1196 (E.D. Cal. 2009)

136.    DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES encouraged, permitted, allowed, and endorsed through a policy, practice and custom of failure to supervise DEFENDANT RONALD GUINTO for the protection of PLAINTIFFS MINOR DOES.

DEFENDANT GUINTO taught at Making Waves Academy in Richmond and founded a youth program called Camp Epic. He used his teacher's position to molest more than a dozen boys, including PLAINTIFF MINOR DOES. DEFENDANT GUINTO founded Camp Epic while working as a teacher at DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES and in 2013 went on numerous camping trips where he was the only adult present with boys of mostly ages 11 and 12.

137.    On or about January 12, 2017, DEFENDANT GUINTO was convicted of 87 of 90 counts related to child molestation, kidnapping and dissuading his young victims from testifying against him. DEFENDANT GUINTO engaged in various acts of molestation ranging from slaps on the groin to oral sex and sodomy with 15 victims, including PLAINTIFF MINOR DOES.

138.    DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES failed, after knowledge, to take protective action to shield PLAINTIFF MINOR DOES from the sexual molestation and continued to allow PLAINTIFF MINOR DOES to go on field trips with DEFENDANT GUINTO after actual knowledge that GUINTO was molesting boys, including PLAINTIFF MINOR DOES.

139.    DEFENDANT MAKING WAVES EDUCATIONAL ENTITIES failed, after knowledge, of GUINTO'S molestation, to scrutinize fraudulently written "parent" permission slips to take PLAINTIFF MINOR DOES on camping trips, when the true fact was GUINTO was taking PLAINTIFF MINOR DOES to a motel 6 in Vallejo and sexually molesting them.

140.    DEFENDANT GUINTO admitted molesting PLAINTIFF MINOR DOES by playing "cup check" — a so-called game where he would slap young boys in the groin — as well as pulling off boys' towels in the locker room, passing gas on them and other sexual behaviors.

141.    WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### AGAINST DEFENDANT GUINTO
**(42 U.S.C. 1983 Violation of**
**The Trafficking Victims Protection Act (TVPA) of 2000)**
**(18 U.S.C. § 1590)**

142.    PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

143.    At all relevant times to the acts complained of herein, DEFENDANTS, and each of them, acted pursuant to lawful authority and under the color of law.

144.    DEFENDANTS, and each of them, deprived PLAINTIFF PARENTS of their Liberty Interest, violating their Fourteenth Amendment Rights of due process.

145.    The Trafficking Victims Protection Act (TVPA) of 2000) provides: "Whoever knowingly recruits, harbors, transports, provides, or obtains, by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both."

146.    DEFENDANT GUINTO knew or should have known that that the illegal sexual relationship with minor boys was one of a "Quid Pro Quo" or "friends with benefits" for minor PLAINTIFFS.

147.    DEFENDANT GUINTO knowingly recruited, harbored, transported, provided, or obtained by any means Plaintiff for "services" of his prurient, lascivious and lustful thoughts and sexual desires, all to PLAINTIFFS' damages, losses and harms.

148.    The DEFENDANTS' actions evidenced a reckless and callous disregard, and deliberate indifference to Plaintiff's constitutional rights. DEFENDANTS' illegal conduct caused, and continues to cause, Plaintiff economic and non-economic damages, including mental and emotional distress. DEFENDANTS' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Plaintiff. The individual DEFENDANTS' conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

**STATE CLAIMS**

**FIFTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**(Violation of Duty of Mandatory Reporting)**

149.    PLAINTIFFS repeat and re-allege each and every allegation set forth above as though fully set forth at length herein.

150.    DEFENDANTS at all times herein relevant had a mandatory obligation to report child abuse.  The Child Abuse and Neglect Reporting Act, ("CANRA"), sections 11164-11174.3 of the California Penal Code. CANRA, is a set of laws that was passed in 1980 to provide definitions and procedures for mandated reporting of child abuse. Child sexual abuse (PC 11165.1) includes sexual assault or sexual exploitation of anyone under the age of 18. Sexual assault includes sex acts with children, intentional masturbation in the presence of children, and child molestation. Sexual exploitation includes preparing, selling, or distributing pornographic materials involving children; performances involving obscene sexual conduct; and child prostitution.

151.    Though everyone should report child abuse, a number of professionals must report abuse or be held liable by law. The specific positions are listed in California Penal Code section 11165.7 which includes teachers and school officials.  DEFENDANTS, at all times herein relevant, were peace officers and had an affirmative duty to report child abuse, including the abuse inflicted by him.

152.    The DEFENDANTS' actions evidenced a reckless and callous disregard, and deliberate indifference to PLAINTIFFS' constitutional rights. DEFENDANTS' illegal conduct caused, and continues to cause, PLAINTIFFS economic and non-economic damages, including mental and emotional distress.

153.    DEFENDANTS' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of PLAINTIFFS. The individual DEFENDANTS' conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**NEGLIGENCE**
**NEGLIGENT SUPERVISION**
**NEGLIGENT HIRING and/or RETENTION**
**NEGLIGENT FAILURE TO WARN TRAIN OR EDUCATE**
**(PLAINTIFFS Against all DEFENDANTS)**

154.    MINOR DOE PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

155.    Prior to and after the first incident of GUINTO'S sexual harassment, molestation and abuse of PLAINTIFFS, through the present, DEFENDANTS, knew or should have known that GUINTO had or was capable of sexually, physically, and mentally abusing PLAINTIFFS or other victims.

156.    DEFENDANTS had special duties to protect the MINOR DOE PLAINTIFFS and the other students within MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC, when such students were entrusted to their care by their parents. PLAINTIFFS' care, welfare and physical custody were entrusted to DEFENDANTS. DEFENDANTS voluntarily accepted the entrusted care of MINOR DOE PLAINTIFFS. As such, DEFENDANTS owed MINOR DOE PLAINTIFFS, minor children, a special duty of care, in addition to a duty of ordinary care, and owed MINOR DOE PLAINTIFFS the higher duty of care that adults dealing with children owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between DEFENDANTS and MINOR DOE PLAINTIFFS. MINOR DOE PLAINTIFFS instituted great trust, faith and confidence in DEFENDANTS, including GUINTO, as their teachers, advisers and mentors.

157.    DEFENDANTS breached their duties of care to the minor PLAINTIFFS by allowing GUINTO to come into contact with the PLAINTIFFS and other students without supervision; by failing to adequately hire, supervise and retain GUINTO whom they permitted

and enabled to have access to MINOR DOE PLAINTIFFS; by failing to investigate or otherwise confirm or deny such facts about GUINTO; by failing to tell or concealing from PLAINTIFFS, their parents, guardians and law enforcement officials that GUINTO was or may have been sexually harassing, molesting and abusing minors; by failing to tell or concealing from MINOR DOE PLAINTIFFS' parents, guardians or law enforcement officials that MINOR DOE PLAINTIFFS were or may have been sexually harassed, molested and abused after DEFENDANTS knew or should have known that GUINTO may have sexually harassed, molested and abused MINOR DOE PLAINTIFFS or others, thereby enabling MINOR DOE PLAINTIFFS to continue to be endangered and sexually harassed, molested and abused, and creating the circumstance where MINOR DOE PLAINTIFFS were less likely to receive medical/mental health care or treatment, thus exacerbating the harm done to MINOR DOE PLAINTIFFS; and by holding out GUINTO to MINOR DOE PLAINTIFFS and to their parents as being in good standing and trustworthy. DEFENDANTS cloaked within the facade of normalcy DEFENDANTS' conduct, contact and actions with MINOR DOE PLAINTIFFS and disguised the nature of the sexual harassment, molestation and abuse and contact.

158. DEFENDANTS breached their duty to MINOR DOE PLAINTIFFS by, *inter alia*, failing to investigate or otherwise confirm or deny such facts, failing to reveal such facts to Minor PLAINTIFFS, the community of the school, students, minors, and law enforcement agencies, placing and continuing to place GUINTO in positions of trust and authority within MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC, and holding out, and continuing to hold out GUINTO to MINOR DOE PLAINTIFFS, the public, the community other school, students, minors, and law enforcement agencies as being in good standing and trustworthy.

159. DEFENDANTS breached their duty to MINOR DOE PLAINTIFFS by, *inter alia*, failing to adequately monitor and supervise GUINTO and stopping GUINTO from committing wrongful sexual acts with minors including MINOR DOE PLAINTIFFS. This belief is founded on the fact that MINOR DOE PLAINTIFFS were informed and believed that the employees and

staff of MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC had suspected the abuse was occurring at the time, and failed to investigate into the matter further. Based on these facts, DEFENDANTS knew or should have known of GUINTO'S incapacity to supervise and stop employees of DEFENDANTS from committing wrongful sexual acts with minors.

## NEGLIGENT SUPERVISION

160.   As an educational institution for minors, where all of the students are entrusted to the teachers, counselors, advisors, mentors, coaches, faculty members and administrators, MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC expressly and implicitly represented that these individuals, including GUINTO, were not a sexual threat to children and others who would fall under GUINTO'S influence, control, direction, and guidance.

161.   DEFENDANTS negligently failed to supervise GUINTO in his positions of trust and authority as teachers, teacher's assistants, counselors and mentors, and/or other authority figure, where they were able to commit wrongful acts against the MINOR DOE PLAINTIFFS. DEFENDANTS failed to provide reasonable supervision of GUINTO. DEFENDANTS further failed to take reasonable measures to prevent sexual harassment, molestation and abuse of minors, including MINOR DOE PLAINTIFFS.

162.   At no time during the periods of time alleged did DEFENDANTS have in place a system or procedure to reasonably investigate, supervise and monitor teachers, including GUINTO to prevent pre-sexual grooming and sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minor students and others in DEFENDANTS' care.

163.   DEFENDANTS were or should have known to be aware and understand how vulnerable children were to sexual harassment, molestation and abuse by counselors, advisors, mentors, coaches, teachers and other persons of authority.

164.     DEFENDANTS' conduct was a breach of their duties to MINOR DOE PLAINTIFFS.

165.     DEFENDANTS breached their duty to MINOR DOE PLAINTIFFS by, *inter alia*, failing to adequately monitor and supervise GUINTO and stopping GUINTO from committing wrongful sexual acts with minors, including MINOR DOE PLAINTIFFS. This belief is founded on the fact that employees and staff of MAKING WAVES EDUCATIONAL ENTITIES, MIDDLE SCHOOL, and CAMP EPIC, including Supervisory Personnel had suspected the abuse was occurring at the time, and failed to investigate into the matter further. Based on these facts, DEFENDANTS knew or should have known of GUINTO'S incapacity to supervise and stop employees of DEFENDANTS from committing wrongful sexual acts with minors.

## NEGLIGENT HIRING/RETENTION

166.     By virtue of MINOR DOE PLAINTIFFS' special relationship with DEFENDANTS and DEFENDANTS' relation to GUINTO. DEFENDANTS owed MINOR DOE PLAINTIFFS a duty to not hire and retain GUINTO, given his dangerous and exploitive propensities, which DEFENDANTS knew or should have known of had they engaged in a meaningful and adequate investigation of their background prior to their hiring.

167.     As an educational institution and operator of a school, where all of the students are minors entrusted to the schools and its employees and agents, DEFENDANTS expressly and implicitly represented that the counselors, advisors, mentors, coaches, teachers and others, including GUINTO, were not a sexual threat to children and others who would fall under GUINTO'S influence, control, direction, and guidance.

168.     At no time during the periods of time alleged did DEFENDANTS have in place a system or procedure to reasonably investigate, supervise and monitor teachers, including GUINTO, to prevent pre-sexual grooming and sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minors, students and others in DEFENDANTS' care.

169.    DEFENDANTS were or should have known to be aware of and understand how vulnerable children were to sexual harassment, molestation and abuse by teachers and other persons of authority within the control of DEFENDANTS.

170.    DEFENDANTS were put on notice, and should have known that GUINTO had previously engaged in dangerous and inappropriate conduct, and that it was, or should have been foreseeable that they were engaging, or would engage in illicit sexual activities with Minor PLAINTIFFS, and others, under the cloak of their authority, confidence, and trust, bestowed upon them through DEFENDANTS.

171.    DEFENDANTS were placed on notice that GUINTO had engaged in dangerous and inappropriate conduct, both before their employment within DEFENDANTS, and during that employment. MINOR DOE PLAINTIFFS are informed, and thereon allege, that other third parties, minors, students, law enforcement officials and parents informed DEFENDANTS of inappropriate conduct committed by GUINTO.

172.    Even though DEFENDANTS knew or should have known of these activities by GUINTO, DEFENDANTS failed to use reasonable care in investigating GUINTO and did nothing to reasonably investigate, supervise or monitor GUINTO to ensure the safety of the minor students.

173.    DEFENDANTS' conduct was a breach of their duties to MINOR DOE PLAINTIFFS.

## NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE

174.    DEFENDANTS owed MINOR DOE PLAINTIFFS a duty to take reasonable protective measures to protect PLAINTIFFS and other minor students from the risk of childhood sexual harassment, molestation and abuse by GUINTO by properly warning, training or educating MINOR DOE PLAINTIFFS and other students about how to avoid such a risk.

175.    DEFENDANTS breached their duty to take reasonable protective measures to protect MINOR DOE PLAINTIFFS and other minor students from the risk of childhood sexual

harassment, molestation and abuse by GUINTO, such as the failure to properly warn, train or educate PLAINTIFFS and other students about how to avoid such a risk.

176.    DEFENDANTS breached their duty to take reasonable protective measures to protect MINOR DOE PLAINTIFFS and other minor students from the risk of childhood sexual harassment, molestation and abuse by GUINTO by failing to supervise and stop employees of DEFENDANTS, including GUINTO, from continuing wrongful sexual acts with minors, including PLAINTIFFS.

**NEGLIGENCE *PER SE-PENAL* CODE MANDATORY CHILD ABUSE REPORTING**

177.    Under the Child Abuse and Neglect Reporting Act, DEFENDANTS were child care custodians and were under a statutory duty to report known or suspected incidents of sexual molestation or abuse of minors to a child protective agency, pursuant to California *Penal Code* § 11166, and/or not to impede the filing of any such report.

178.    DEFENDANTS knew or should have known that their agent, employee, counselor, advisor and mentor, GUINTO had sexually molested, abused or caused touching, battery, harm, and other injuries to minors, including PLAINTIFFS, giving rise to a duty to report such conduct under California *Penal Code* § 11166.

179.    DEFENDANTS knew, or should have known, in the exercise of reasonable diligence, that an undue risk to minors, including MINOR DOE PLAINTIFFS, existed because DEFENDANTS and their agents did not comply with California's mandatory reporting requirements.

180.    By failing to report the continuing molestations and abuse, which DEFENDANTS knew of or should have known of, and by ignoring the fulfillment of the mandated compliance with the reporting requirements provided under California *Penal Code* §11166. DEFENDANTS created the risk and danger contemplated by the Child Abuse and Neglect Reporting Act and as a result, unreasonably and wrongfully exposed MINOR DOE PLAINTIFFS and other minors to sexual molestation and abuse.

181.   MINOR DOE PLAINTIFFS were members of the class of persons for whose protection California *Penal Code* § 11166 was specifically adopted to protect.

182.   Had DEFENDANTS adequately reported the molestation of MINOR DOE PLAINTIFFS and other minors as required by California *Penal Code* § 11166, further harm to MINOR DOE PLAINTIFFS and other minors would have been avoided.

183.   As a proximate result of DEFENDANTS' failure to follow the mandatory reporting requirements of California *Penal Code* § 111 66, DEFENDANTS wrongfully denied MINOR DOE PLAINTIFFS and other minors the intervention of child protection services. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the molestation of Minor PLAINTIFFS by GUINTO.

184.   The physical, mental, and emotional damages and injuries resulting from the sexual molestation of PLAINTIFFS by GUINTO were the type of occurrence and injuries that the Child Abuse and Neglect Reporting Act was designed to prevent.

185.   As a result, DEFENDANTS' failure to comply with the mandatory reporting requirements of California *Penal Code* § 11166 also constituted a *per se* breach of DEFENDANTS' duties to MINOR DOE PLAINTIFFS.

**NEGLIGENCE *PER* SE---EDUCATION CODE SAFETY AND VIOLENCE PROGRAMS**

186.   Under the Education Code *(Education Code* §§ 32228, 32228.5, 35294.10-35294.15), DEFENDANTS had a duty to establish various school safety and violence prevention programs designed to protect minor students such as MINOR DOE PLAINTIFFS from the sexually exploitive acts of serial predators such as GUINTO.

187.   DEFENDANTS knew or should have known that their agent, employee, counselor, advisor and mentor, GUINTO, was engaging in sexually exploitive acts with MINOR DOE PLAINTIFFS.

188.   DEFENDANTS knew, or should have known in the exercise of reasonable diligence, that an undue risk to minors, including MINOR DOE PLAINTIFFS, existed because

DEFENDANTS did not comply with California's Education Code school safety and protection requirements.

189.    By failing to adhere to the Education Code's school safety and protection requirements, DEFENDANTS created the risk and danger contemplated by the Education Code and as a result, unreasonably and wrongfully exposed MINOR DOE PLAINTIFFS and other minors to sexual molestation and abuse.

190.    MINOR DOE PLAINTIFFS were members of the class of persons for whose protection the Education Code's school safety and violence protection programs were specifically adopted to protect.

191.    Had DEFENDANTS established various school safety and violence prevention programs designed to protect minor students such as Minor PLAINTIFFS from the sexually exploitive acts of serial predators such as GUINTO, further harm to MINOR DOE PLAINTIFFS and other minors would have been avoided.

192.    As a proximate result of DEFENDANTS' failure to establish various school safety and violence prevention programs designed to protect minor students such as MINOR DOE PLAINTIFFS from the sexually exploitive acts of serial predators such as GUINTO, DEFENDANTS wrongfully denied MINOR DOE PLAINTIFFS and other minors the benefit of the protection of such programs.

193.    The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Minor PLAINTIFFS by GUINTO, were the type of occurrence and injuries that the Education Code's school safety and violence prevention programs were designed to prevent.

194.    As a result, DEFENDANTS' failure to comply with the Education Code's school safety and violence prevention programs also constituted a *per se* breach of DEFENDANTS' duties to MINOR DOE PLAINTIFFS.

195.    As a result of the above-described conduct, MINOR DOE PLAINTIFFS suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD: CIVIL CODE § 1573
### (ALL PLAINTIFFS
### Against all DEFENDANTS)

196.   PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

197.   By holding themselves out as qualified institutions of learning for children, by holding GUINTO out as an agent of DEFENDANTS, and by allowing undertaking the academic, psychological and emotional instruction and guidance of the Minor PLAINTIFFS through the actions of GUINTO, DEFENDANTS entered into a fiduciary, special and confidential relationship with PLAINTIFFS.

198.   DEFENDANTS breached their fiduciary, special and confidential duties to PLAINTIFFS by the wrongful and negligent conduct described herein above, and by so doing gained an advantage over MINOR DOE PLAINTIFFS in matters relating to their safety, security and health. In breaching such duties, DEFENDANTS were able to sustain their status as institutions of high moral repute, preserve their reputation in the community, including their administrators and staff, all at the expense of PLAINTIFFS' further injury and in violation of DEFENDANTS' mandatory duties.

199.   By virtue of their fiduciary relationship and special relationship with PLAINTIFFS, DEFENDANTS owed PLAINTIFFS a duty to:

a.   Investigate or otherwise confirm or deny such claims of sexual abuse;

b.  Reveal such facts to MINOR DOE PLAINTIFFS, their parents, and caretakers, the school community, and law enforcement agencies;

c.  Refuse to place GUINTO and other molesters in positions of trust and authority within DEFENDANTS' institutions;

d.  Refuse to hold out GUINTO to the school community, students, minors, parents and law enforcement agencies as being in good standing and. trustworthy in keeping with his and their position as a teacher, counselor, advisor, mentor and authority figure;

e.  Refuse to assign GUINTO to positions of power within the school and over minor students; and

f.  Disclose to MINOR DOE PLAINTIFFS and their parents, the public, the community, the school, students, minors, and law enforcement agencies the wrongful, tortious, and criminal acts of GUINTO.

200.  DEFENDANTS' breached their respective duties by:

a.  Making no or inadequate investigations of GUINTO;

b.  Issuing no warnings about GUINTO;

c.  Permitting GUINTO to routinely be alone and in control of minors, unsupervised;

d.  Not having adopted a policy to prevent GUINTO from routinely having minors and minor students in their unsupervised control;

e.  Making no reports of any allegations of GUINTO'S dangerous and inappropriate conduct prior to and during his employment at DEFENDANTS; and

f.  Assigning and continuing to assign GUINTO to duties which placed him in positions of authority and trust over minors, positions in which GUINTO could easily isolate and sexually abuse minors.

201.  At the time that DEFENDANTS engaged in such suppression and concealment of acts, such acts were done for the purpose of causing PLAINTIFFS to forbear on their rights.

202.   DEFENDANTS' misconduct did reasonably cause PLAINTIFFS to forbear on their rights.

203.   The misrepresentation, suppression and concealment of facts were likely to mislead PLAINTIFFS and others to believe that DEFENDANTS had no knowledge of any charges, or that there were no other charges of unlawful and sexual misconduct against GUINTO or others and that there was no need for them to take further action or precaution.

204.   The misrepresentation, suppression, and concealment of facts by DEFENDANTS were likely to mislead PLAINTIFFS and others to believe that DEFENDANTS had no knowledge of the fact that GUINTO was a danger to students.

205.   DEFENDANTS knew or should have known at the time they suppressed and concealed the true facts regarding GUINTO and others' dangerous and inappropriate conduct that the resulting impressions were misleading.

206.   DEFENDANTS suppressed and concealed the true facts with the purpose of preventing PLAINTIFFS, their parents, and others, from learning that GUINTO and others had been engaging in dangerous and inappropriate conduct and were continuing to sexually harass, molest and abuse minors and others under GUINTO'S and DEFENDANTS' control, direction, and guidance, with complete impunity; inducing people, including PLAINTIFFS and other benefactors and donors to participate and financially support DEFENDANTS' school and other enterprises of DEFENDANTS; preventing further reports and outside investigations into GUINTO'S and DEFENDANTS' conduct; preventing discovery of DEFENDANTS' own conduct; avoiding damage to the reputations of DEFENDANTS; protecting DEFENDANTS' power and status in the community and the academic community; avoiding damage to the reputation of DEFENDANTS and DEFENDANTS' institutions; and avoiding the civil and criminal liability of DEFENDANTS, of GUINTO, and of others.

207.   DEFENDANTS, with knowledge of the tortious nature of their own and others' conduct, gave each other substantial assistance to perpetrate the misrepresentations, fraud and deceit alleged herein.

208.   DEFENDANTS' suppression and concealment of facts, and in reliance thereon, PLAINTIFFS were induced to act or induced not to act, exactly as intended by DEFENDANTS. Specifically, PLAINTIFFS were induced to believe that there were no allegations of dangerous or inappropriate behavior of GUINTO. Had PLAINTIFFS or others known the true facts, they would have not participated further nor continued to financially support the DEFENDANTS activities alleged herein; they would have reported the matters to the proper authorities, to other students and their parents so as to prevent future recurrences; they would not have allowed children, including MINOR DOE PLAINTIFFS, to be alone with, or have any relationship with GUINTO; they would not have allowed children, including MINOR DOE PLAINTIFFS, to attend MIDDLE SCHOOL or be under the control of DEFENDANTS; they would have undertaken their own investigations which would have led to discovery of the true facts; and they would have sought psychological counseling for MINOR DOE PLAINTIFFS, and for other children molested and abused by GUINTO.

209.   By giving GUINTO the position of teacher, counselor, advisor and mentor, DEFENDANTS impliedly represented that GUINTO was safe and morally fit to give children instruction, direction and guidance.

210.   When DEFENDANTS made these representations or non-disclosure of material facts, DEFENDANTS knew or should have known that the facts were otherwise. DEFENDANTS knowingly and intentionally suppressed the material facts that GUINTO had engaged in dangerous and inappropriate conduct, and knew of or learned of conduct, or should have learned of conduct by GUINTO which placed DEFENDANTS on notice that GUINTO was likely abusing children. In fact, DEFENDANTS had in place a policy and procedure for concealing child abusers as well as failing to document or report such abuse, in direct violation of their mandatory legal duties and obligations.

211.   Because of MINOR DOE PLAINTIFFS' young age, and because of the status of GUINTO as an authority figure to MINOR DOE PLAINTIFFS and their parents, PLAINTIFFS were vulnerable to GUINTO. GUINTO sought MINOR DOE PLAINTIFFS out and was

empowered by and accepted PLAINTIFFS' vulnerability. PLAINTIFFS' vulnerability also prevented MINOR DOE PLAINTIFFS from effectively protecting themselves from the sexual advances of GUINTO. MINOR DOE PLAINTIFFS' parent's vulnerability also prevented them from effectively protecting their children from the sexual advances of GUINTO.

212.   DEFENDANTS had the duty to obtain and disclose information relating to misconduct by GUINTO.

213.   DEFENDANTS misrepresented, concealed or failed to disclose information relating to misconduct by GUINTO.

214.   DEFENDANTS knew that they had misrepresented, concealed or failed to disclose information related to misconduct by GUINTO.

215.   PLAINTIFFS justifiably relied upon DEFENDANTS for information relating to misconduct by GUINTO.

216.   DEFENDANTS, in concert with each other and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they misrepresented, concealed or failed to disclose information relating to the misconduct of GUINTO. This behavior created the inability of DEFENDANTS to supervise or stop GUINTO from sexually harassing, molesting and abusing MINOR DOE PLAINTIFFS, and their own failure to properly investigate, supervise and monitor his conduct with minors and students.  By so concealing, DEFENDANTS committed at least one act in furtherance of the conspiracy.

217.   As a result of the above-described conduct, PLAINTIFFS have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

218.    In addition when PLAINTIFFS finally discovered the fraud of DEFENDANTS, and continuing thereafter, PLAINTIFFS experienced recurrences of the above-described injuries. In addition, when PLAINTIFFS finally discovered the fraud of DEFENDANTS, and continuing thereafter, PLAINTIFFS experienced extreme and severe mental anguish and emotional distress that PLAINTIFFS had been the victims of DEFENDANTS' fraud; that PLAINTIFFS had not been able to help other minors being molested because of the fraud, and that PLAINTIFFS had not been able, because of the fraud, to receive timely medical treatment needed to deal with the problems PLAINTIFFS had suffered and continue to suffer as a result of the sexual harassment, molestation and abuse.

219.    As a result of the above described conduct, PLAINTIFFS suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress. embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

220.    In subjecting PLAINTIFFS to the wrongful treatment herein described, DEFENDANTS MAKING WAVES EDUCATIONAL ENTITIES, GUINTO, and CAMP EPIC acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS rights, so as to constitute malice and oppression under California *Civil Code* §3294. PLAINTIFFS are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against MAKING WAVES EDUCATIONAL ENTITIES, GUINTO, and CAMP EPIC, in an amount to be shown according to proof.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

### EIGHTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All PLAINTIFFS
### Against All DEFENDANTS)

221.    PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

222.    DEFENDANTS' conduct toward PLAINTIFFS, as described herein, was outrageous and extreme.

223.    A reasonable person would not expect or tolerate DEFENDANTS putting GUINTO into positions of authority at the MIDDLE SCHOOL, MAKING WAVES EDUCATIONAL ENTITIES, and CAMP EPIC, which enabled GUINTO to have access to minor students, including MINOR DOE PLAINTIFFS, so that he could commit wrongful sexual acts with them, including the conduct described herein above. PLAINTIFFS held great trust, faith and confidence in DEFENDANTS, which, by virtue of DEFENDANTS' wrongful conduct, turned to fear. Moreover, by failing to report GUINTO or honor any of their legal reporting obligations and by failing to promptly notify the MINOR DOE PLAINTIFFS' parents of the abuse, DEFENDANTS ensured that MINOR DOE PLAINTIFFS would be directly harmed. Under the holding in Phyllis P. case, a special relationship and a duty to notify the Parent PLAINTIFFS was stated. Such duty is independent of any duty DEFENDANTS owed to the MINOR DOE PLAINTIFFS and is a direct duty owed to the parents of the MINOR DOE PLAINTIFFS. DEFENDANTS failed to exercise their duty, thereby making the parents of the MINOR DOE PLAINTIFFS direct victims of DEFENDANTS' failures who can recover for any emotional distress proximately caused thereby.

224.    A reasonable person would not expect or tolerate DEFENDANTS to be incapable of supervising and preventing employees of DEFENDANTS, including GUINTO, from committing wrongful sexual acts with minor students, including PLAINTIFFS, or to properly supervise GUINTO to prevent such abuse from occurring, or to promptly notify parents or authorities.

225.    DEFENDANTS' conduct described herein was intentional and malicious and done for the purpose of causing, or with the substantial certainty that it would cause, PLAINTIFFS to suffer humiliation, mental anguish and emotional and physical distress.

226.    As a result of the above-described conduct, PLAINTIFFS suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

227.    In subjecting PLAINTIFFS to the wrongful treatment herein described, DEFENDANTS MAKING WAVES EDUCATIONAL ENTITIES, GUINTO, and CAMP EPIC acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS' rights, so as to constitute malice and oppression under California *Civil Code* §3294. PLAINTIFFS are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against MAKING WAVES EDUCATIONAL ENTITIES, GUINTO, and CAMP EPIC, in a sum to be shown according to proof.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

**NINTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(ALL PLAINTIFFS Against all DEFENDANTS)**

228.    PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

229.    DEFENDANTS, as schoolteachers, staff, faculty, administrators and/or MAKING WAVES EDUCATIONAL ENTITIES, and CAMP EPIC officials were in a fiduciary relationship with PLAINTIFFS, owing them a special duty of due care. All DEFENDANTS are mandated reporters with respect to claims of child abuse and child safety.

230.    Moreover, DEFENDANTS owed the parents of MINOR DOE PLAINTIFFS a statutory, common law and constitutional duty to protect them and guarantee their safety at school. The parents of MINOR DOE PLAINTIFFS also have a constitutionally guaranteed

1  interest in the rearing and upbringing of their minor children, including but not limited to, the

2  ability to ensure their child's safety both at home and at school.

3       231.   The DEFENDANTS also owed a special duty to the parents of MINOR DOE

4  PLAINTIFFS. As direct victims for failure to notify of abuse of their minor children (See,

5  *Phyllis P.* v. *Claremont Unified School District,* 183 Cal. App. 3d at 1193) which held that a

6  school district had a special relationship with a parent because the parent was the "real and

7  foreseeable" victim of the DEFENDANTS' negligent conduct. Direct victims may bring claims

8  where there was a negligent breach of a duty arising out of a preexisting relationship. Any breach

9  committed by the DEFENDANTS violates this special relationship and duty owed to the parents

10  of MINOR DOE PLAINTIFFS.

11       232.   DEFENDANTS breached their fiduciary duty by failing to properly supervise

12  GUINTO and take appropriate steps to prevent the lewd and lascivious conduct perpetrated by

13  GUINTO against MINOR DOE PLAINTIFFS. DEFENDANTS also failed to report GUINTO

14  pursuant to MAKING WAVES EDUCATIONAL ENTITIES and CAMP EPIC policy. In

15  addition, DEFENDANTS failed to report GUINTO'S abuse or promptly notify the parents of

16  MINOR DOE PLAINTIFFS or their minor children.

17       233.   As a result of the above-described conduct, PLAINTIFFS suffered and continue

18  to suffer great pain of mind and body, shock, emotional distress, physical manifestations of

19  emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of

20  enjoyment of life; have suffered and continue to suffer and were prevented and will continue to

21  be prevented from performing daily activities and obtaining the full enjoyment of life; will

22  sustain loss of earnings and earning capacity, and have incurred and will continue to incur

23  expenses for medical and psychological treatment, therapy, and counseling.

24       234.   In subjecting PLAINTIFFS to the wrongful treatment herein described,

25  DEFENDANTS MAKING WAVES EDUCATIONAL ENTITIES, GUINTO, and CAMP EPIC

26  acted willfully and maliciously with the intent to harm PLAINTIFFS and in conscious disregard

27  of PLAINTIFFS' rights, so as to constitute malice and oppression under California *Civil Code*

§3294. PLAINTIFFS are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against MAKING WAVES EDUCATIONAL ENTITIES, GUINTO, and CAMP EPIC, in a sum to be shown according to proof.

235.   WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

**TENTH CAUSE OF ACTION**
**SEXUAL HARASSMENT: CIVIL CODE § 51.9**
**(Minor PLAINTIFFS Against ALL DEFENDANTS)**

236.   MINOR DOE PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

237.   During MINOR DOE PLAINTIFFS' time as students at the MIDDLE SCHOOL and CAMP BPIC, GUINTO intentionally, recklessly, and wantonly made sexual advances, solicitations, requests, demands for sexual compliance of a hostile nature based on DOE PLAINTIFFS' gender that were unwelcome, pervasive and severe. GUINTO intentionally, recklessly and wantonly did acts which resulted in harmful and offensive contact with intimate parts of MINOR DOE PLAINTIFFS' person, including but not limited to GUINTO using the authority and trust inherent in his position as a schoolteacher and counselor to exploit them physically, psychologically and emotionally. These acts were done for GUINTO'S sexual gratification; all while GUINTO was acting in the course and scope of his agency/employment with MAKING WAVES EDUCATIONAL ENTITIES, and CAMP EPIC.

238.   The incidents of abuse outlined herein above took place while MINOR DOE PLAINTIFFS were under the care of GUINTO, in his capacity and position as schoolteacher and counselor, while acting specifically on behalf of MAKING WAVE EDUCATIONAL ENTITIES, and CAMP EPIC.

239.   Because of Minor PLAINTIFFS' young age and relationship with GUINTO as students at MAKING WAVES EDUCATIONAL ENTITIES, and CAMP PIC, MINOR DO PLAINTIFFS were unable to easily terminate their student-teacher and student-counselor relationships with GUINTO.

240.    Because of GUINTO'S position of authority over MINOR DOE PLAINTIFFS, and MINOR DOE PLAINTIFFS' mental and emotional state, and their young age under the age of consent, MINOR DOE PLAINTIFFS' were unable to, and did not, give meaningful consent to such acts.

241.    Even though DEFENDANTS knew or should have known of these activities by GUINTO, DEFENDANTS did nothing to investigate, supervise or monitor GUINTO to ensure the safety of the MINOR DOE PLAINTIFFS. DEFENDANTS ratified the sexual misconduct of GUINTO by retaining him in employment after discovering his misconduct.

242.    DEFENDANTS' conduct was a breach of their duties to MINOR DOE PLAINTIFFS.

243.    As a result of the above-described conduct, MINOR DOE PLAINTIFFS suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

244.    In subjecting Minor PLAINTIFFS to the wrongful treatment herein described, DEFENDANTS MAKING WAVES EDUCATIONAL ENTITIES, GUINTO, and CAMP EPIC acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS' rights, so as to constitute malice and oppression under California Civil Code section 3294. PLAINTIFFS are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against MAKING WAVES EDUCATION ENTITIES, GUINTO, and CAMP EPIC, in a sum to be shown according to proof.

245.    WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION
### ASSAULT
### (Minor PLAINTIFFS Against GUINTO)

PLAINTIFFS' COMPLAINT FOR DAMAGES - 63

246.    PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

247.    Defendant GUINTO, in doing the things herein alleged, including intending to engage in sexual touching, conduct, and physical contact with each MINO DOE PLAINTIFF, all while GUINTO was acting in the course and scope of his agency/employment with DEFENDANTS, put MINOR DOE PLAINTIFFS in imminent apprehension of such contact or was intended to put PLAINTIFFS in imminent apprehension of such contact.

248.    In doing the things herein alleged, MINOR DOE PLAINTIFFS were put in imminent apprehension of a harmful or offensive contact by GUINTO, and actually believed GUINTO had the ability to make harmful or offensive contact with PLAINTIFFS' persons.

249.    PLAINTIFFS did not consent to GUINTO'S intended harmful or offensive contact with PLAINTIFFS per ODS, or his intention to put PLAINTIFFS in imminent apprehension of such contact. Additionally, because PLAINTIFFS were minors during the time herein alleged, PLAINTIFFS lacked the ability to consent to sexual contact with any person, especially with a mentor, teacher, coach and counselor at the school they attended.

250.    In doing the things herein alleged, GUINTO violated-PLAINTIFFS' rights, pursuant to Civil Code section 43, of protection from bodily restraint or harm, and from personal insult. In doing the things herein alleged, GUINTO violated his duty pursuant to Civil Code section 1708 to abstain from injuring the persons of PLAINTIFFS or infringing upon their rights.

251.    As a result of the above-described conduct, PLAINTIFFS have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life, have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

252.   PLAINTIFFS are informed and based thereon allege that the conduct of DEFENDANTS was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of their right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling PLAINTIFFS to punitive damages against DEFENDANTS in an amount appropriate to punish and set an example of them.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

### TWELFTH  CAUSE OF ACTION
### SEXUAL BATTERY (C.C. §1708.5)
### (Minor PLAINTIFFS Against GUINTO)

253.   PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

254.   During PLAINTIFFS' time as a minor students at MIDDLE SCHOOL, CAMP EPIC, and the MAKING WAVES EDUCATIONAL ENTITIES, DEFENDANT GUINTO intentionally, recklessly and wantonly did acts which were intended to, and did result in harmful and offensive contact with intimate parts of PLAINTIFFS' persons, including but not limited to DEFENDANT GUINTO engaging in sexual touching, contact, and conduct with the MINOR DOE PLAINTIFFS.

255.   Defendant GUINTO did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of PLAINTIFFS' persons that would offend any reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate part of PLAINTIFFS' persons that would offend any reasonable sense of personal dignity.

256.   Because of GUINTO'S position of authority over PLAINTIFFS, and PLAINTIFFS' mental and emotional states, and PLAINTIFFS' young ages under the age of consent, PLAINTIFFS were unable to give, and did not give meaningful consent to such acts.

257.    As a direct, legal and proximate result of the acts of Defendant GUINTO, PLAINTIFFS sustained serious and permanent injuries to their persons, all to their damage in an amount to be shown according to proof and within the jurisdiction of the Court.

258.    As a direct result of the sexual abuse by GUINTO, PLAINTIFFS have difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over PLAINTIFFS, including supervisors, and in intimate, confidential and familial relationships, due to the trauma of childhood sexual abuse inflicted upon them by DEFENDANTS. This inability to interact creates conflict with PLAINTIFFS' values of trust and confidence in others, and has caused PLAINTIFFS substantial emotional distress, anxiety, nervousness and fear. As a direct result of the molestation by GUINTO, PLAINTIFFS have had issues with their personal lives, as PLAINTIFFS have issues with trust and are unable to maintain relationships. These feelings have caused PLAINTIFFS substantial emotional distress, anxiety, nervousness and fear.

259.    PLAINTIFFS are informed and based thereon allege that the conduct of DEFENDANTS was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of their right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling PLAINTIFFS to punitive damages against DEFENDANTS in an amount appropriate to punish and set an example of them.

WHEREFORE, PLAINTIFFS pray judgment as hereinafter set forth.

**THIRTEENTH CAUSE OF ACTION**
**GENDER VIOLENCE (C.C. §52.4)**
**(Minor PLAINTIFFS Against GUINTO)**

260.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

261.    DEFENDANTS' acts committed against PLAINTIFFS, as alleged herein, including the sexual harassment, molestation and abuse of the MINOR DOE PLAINTIFFS

constitute gender violence and a form of sex discrimination in that one or more of DEFENDANTS' acts would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

262. DEFENDANTS' acts committed against PLAINTIFFS, as alleged herein, including the sexual harassment, molestation and abuse of the MINOR DOE PLAINTIFFS constitutes gender violence and a form of sex discrimination in that DEFENDANTS' conduct caused a physical intrusion or physical invasion of a sexual nature upon PLAINTIFFS under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

263. As a proximate result of Defendant GUINTO'S acts, PLAINTIFFS are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. PLAINTIFFS are also entitled to an award of attorney's fees and costs pursuant to Civil Code § 52.4, against Defendant GUINTO.

264. WHEREFORE, PLAINTIFFS pray for a jury trial and for judgment against DEFENDANTS as follows:

## PRAYER FOR RELIEF

1. For economic and non-economic damages;

2. For prejudgment interest at the prevailing legal rate;

3. For costs of the suit including reasonable attorneys' fees;

4. For all statutory damages, penalties and remedies.

5. For such other and further relief as the Court may deem proper.

6. For Punitive Damages against all individual MAKING WAVE DEFENDANTS AND DEFENDANT RONALD GUINTO

**JURY TRIAL DEMANDED.**

DATED:  SEPTEMBER 2, 2017        LAW OFFICES OF BONNER & BONNER

                                 /s/*Charles A. Bonner*
                                 CHARLES A. BONNER, ESQ.
                                 ATTORNEY FOR PLAINTIFFS